POTOMAC LEASING COMPANY v THE FRENCH CONNECTION
SHOPS, INC

Docket No. 99155. Submitted June 8, 1988, at Lansing. Decided July
14, 1988.

Profit Systems of Florida through Dan Logan, its sales agent,
convinced The French Connection Shops, Inc., a Florida corpo-
ration which operates restaurants in the State of Florida, to
obtain two machines which produce frozen drinks. The ma-
chines were sold by Profit Systems to Potomac Leasing Com-
pany, which in turn leased them to French Connection, with
Wayne Cartier, Jr., a French Connection corporate officer, as
personal guarantor. When French Connection subsequently
failed to make its lease payments, Potomac Leasing brought an
action in the Oakland Circuit Court against French Connection
and Cartier. The trial court, Jessica R. Cooper, J., denied a
motion for summary disposition brought by defendants, who
had argued that the trial court lacked personal jurisdiction
over them, and subsequently granted summary disposition in
favor of plaintiff, ruling that there were no genuine issues of
material fact and plaintiff was entitled to judgment as a matter
of law. Defendants appealed.

The Court of Appeals *held:*

1. Under the terms of the lease agreement, the parties
consented to personal jurisdiction in the State of Michigan in
any action or proceeding brought in any court therein, state or
federal, arising from the lease transaction. Thus, the trial court
had proper personal jurisdiction over defendants.

2. No genuine issue of material fact, which would have
precluded summary disposition, existed regarding whether Lo-
gan, in addition to being an agent for Profit Systems, was also
an agent for Potomac Leasing and that Potomac Leasing was
therefore bound by a promise made by Profit Systems that
French Connection, if dissatisfied with the machines within six

REFERENCES
Am Jur 2d, Agency §§ 78 *et seq.*
Am Jur 2d, Courts §§ 1236, 139-141.
Validity of contractual provision limiting place or court in which
action may be brought. 31 ALR4th 404.

months of installation, could return the machines and be free from any further obligation. Defendants presented no evidence establishing that Logan was an agent or apparent agent of Potomac Leasing. Additionally, even if Logan was an agent, under the provisions of the lease agreement he lacked the authority to vary the terms of the lease.

Affirmed.

1. CONTRACTS — PARTIES — JURISDICTION — VENUE.

Parties to a contract may agree, even in advance of litigation, to submit to the personal jurisdiction of a particular forum.

2. AGENCY — APPARENT AUTHORITY.

Apparent authority of an alleged agent must flow from the representations of the principal and not the representations of the alleged agent.

*Evo & Mammina* (by *William B. Evo*), for plaintiff.

*Bell & Hertler, P.C.* (by *David C. Hertler*), for defendants.

Before: DANHOF, C.J., and SAWYER and D. R. FREEMAN,* JJ.

PER CURIAM. Defendants appeal from an order of summary disposition in favor of plaintiff for no genuine issue of material fact, MCR 2.116(C)(10), on plaintiff's claim for moneys owed under a lease of personal property. We affirm.

Defendant French Connection is a Florida business which operates restaurants in the State of Florida. Defendant Cartier is an officer of the corporation. In 1985, a Florida vendor, Profit Systems of Florida, contacted defendants through its sales agent, Dan Logan, to sell defendants a line of slush equipment to prepare for sale a frozen drink product. Logan interested defendants in the product, resulting in a sale in which defendants would

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lease two frozen ice machines for a three-year period. The lease was arranged through plaintiff leasing company. Thus, the machines selected by defendant Cartier were sold to the leasing company, which in turn leased the machines to defendants.

Although Logan was an employee of Profit Systems, he did carry with him the various documents to initiate the lease transaction and was the person who brought to defendant Cartier's attention the possibility of conducting the transaction under a lease rather than an outright sale. In consummating the deal, two separate documents were executed by defendant Cartier as agent for defendant French Connection. The first document was the equipment order by French Connection with Profit Systems. The second document was the lease agreement executed between defendant French Connection as the lessee, defendant Cartier as the personal guarantor of the lease, and plaintiff Potomac Leasing as the lessor. The order form, to which plaintiff was not a party, contained a handwritten clause that Profit Systems agreed that, if defendant Cartier was dissatisfied with the equipment within six months after installation, Profit Systems would remove the equipment and the lease would be void. The lease agreement itself does not contain an analogous clause.

After the installation of the two frozen slush machines at two of defendants' locations, defendant Cartier became dissatisfied with the units. One unit failed to operate properly and the second unit, while operating properly, generated insufficient sales revenues to pay for itself. Accordingly, defendant Cartier attempted to execute the provision of the order agreement which permitted him to return the equipment to Profit Systems. At the same time, allegedly because of his dissatisfaction

with the unit which would not operate, defendant Cartier did not remit any of the lease payments to plaintiff. Plaintiff therefore began its attempts to collect the moneys owed on the lease, resulting in the instant litigation.

On appeal, defendants first argue that the trial court did not have personal jurisdiction over them and erred in denying defendants' earlier motion for summary disposition pursuant to MCR 2.116(C)(1). We disagree.

In their brief on appeal, defendants present a rather detailed argument in support of the position that they have insufficient contact with the State of Michigan to allow Michigan to exercise long-arm jurisdiction over them in this case. In response, plaintiff argues that there were sufficient contacts and that, in any event, defendants agreed to submit to Michigan jurisdiction under the lease agreement. It is unnecessary for us to conclude whether defendants did, in fact, have sufficient minimum contacts with Michigan to permit the exercise of long-arm jurisdiction over defendants in this case as we agree with plaintiff that defendants agreed to submit to jurisdiction in Michigan. Paragraph 18 of the lease agreement provides as follows:

> This Agreement shall be governed and interpreted in accordance with the laws of the State of Michigan and, for the purpose of resolving any issue pertaining to conflict of laws, this Agreement shall be deemed to be fully and solely executed, performed and/or observed in the State of Michigan. *The parties hereto expressly consent to personal jurisdiction in the State of Michigan in any action or proceeding brought in any court therein, state or federal, arising from or alleging facts arising from the transactions contemplated herein.* [Emphasis added.]

It has been recognized by both this Court and by the United States Supreme Court that parties may agree, even in advance of litigation, to submit to the personal jurisdiction of a particular forum. See *Burger King Corp v Rudzewicz,* 471 US 462, 472, n 14; 105 S Ct 2174; 85 L Ed 2d 528 (1985); *National Equipment Rental, Ltd v Miller,* 73 Mich App 421, 424; 251 NW2d 611 (1977). As the above-quoted portion of the lease agreement clearly indicates, defendants consented to personal jurisdiction in the courts of the State of Michigan. Accordingly, the trial court correctly ruled that it had personal jurisdiction over defendants.

Defendants also argue that the trial court erred in granting summary disposition for no genuine issue of material fact in favor of plaintiff. The essence of defendants' argument, both in the trial court and in this Court, is that Logan may have been an agent of both plaintiff and the vendor and, accordingly, the representations made by Logan that the equipment could be returned and the lease voided within six months is enforceable against both plaintiff and the vendor. We disagree that there is any genuine issue of material fact on the agency question.

Logan's promise to defendants that they could return the equipment and void the lease within six months is binding against plaintiff only if it is found that Logan was plaintiff's agent. Defendants assert that there remain three questions of material fact to be decided by the trier of fact, any one of which, if established, would support defendants' position: (1) Logan was the actual agent of plaintiff in negotiating the terms of the equipment lease; (2) although Logan was not plaintiff's agent, plaintiff is estopped to deny the agency; and (3) Logan is an agent based upon his representations to defendants which induced defendants to act to their

prejudice, thus estopping plaintiff from denying the agency. We, however, disagree with defendants that there remains any genuine issue of material fact on these questions.

With respect to whether Logan was actually an agent of plaintiff, defendants point to no evidence establishing that he was actually an agent. Furthermore, defendant Cartier testified at his deposition that at no time did any person associated with plaintiff indicate that either Logan or his employer, Profit Systems, was plaintiff's agent. Furthermore, at the top of the lease agreement in bold face print, plaintiff specifically disclaims any agency relationship with Profit Systems or its employees:

> Neither Vendor nor any salesman is an agent of Lessor nor are they authorized to waive or alter the terms of this Lease. Their representations shall in no way affect Lessee or Lessor's rights or obligations as herein set forth.

In light of Cartier's admissions at his deposition and the language of the lease agreement itself, we conclude that there is no genuine issue of material fact and that Logan was not an agent of plaintiff.

Turning to defendants' remaining two allegations of questions of material fact, they both essentially restate the same theory, that plaintiff is estopped to deny that Logan was their agent. The flaw in defendants' theory is that, by Cartier's own admission in his deposition, plaintiff never made any representations that Logan or Profit Systems was its agent. Rather, at most, defendants suggest that Logan made representations to Cartier during negotiations which induced Cartier to believe that Logan was an agent of plaintiff. It is, however, settled law that apparent authority of an alleged

agent must flow from the representations of the principal and not the representations of the alleged agent. See *Smith v Saginaw Savings & Loan Ass'n,* 94 Mich App 263, 271; 288 NW2d 613 (1979). In the case at bar, defendants only point to alleged representations by Logan to establish the apparent authority. Accordingly, their argument must fail since Logan's representations, if any, cannot be the basis for establishing his own authority.

Finally, we note that, even if Logan was plaintiff's agent, Logan's agreement to allow cancellation of the lease within six months would be unenforceable because Paragraph 15 of the lease agreement itself provided, in bold print, that the terms of the lease could not be modified except by a written instrument executed by an officer of the corporation:

> IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT ALL UNDERSTANDINGS AND AGREEMENTS HERETOFORE AND BETWEEN THE PARTIES HERETO RELATIVE TO THIS LEASE ARE MERGED IN THIS AGREEMENT, WHICH CONTAINS THE ENTIRE AGREEMENT AND UNDERSTANDING OF THE PARTIES HERETO, AND NEITHER PARTY RELIES UPON ANY OTHER STATEMENT OR REPRESENTATION. *THIS AGREEMENT MAY NOT BE MODIFIED OR CANCELLED EXCEPT BY AN INSTRUMENT IN WRITING SIGNED BY THE LESSEE AND A CORPORATE OFFICER OF THE LESSOR.* [Emphasis added.]

Thus, even if Logan was an agent of plaintiff, he specifically lacked the authority to modify the lease agreement. Accordingly, there is no genuine issue of material fact concerning whether plaintiff was bound by Logan's promise to Cartier that he could cancel the lease within six months. As dis-

cussed above, Logan lacked the authority to bind plaintiff to such a promise.[1]

For the above reasons, we conclude that the trial court properly granted summary disposition in favor of plaintiff.

Affirmed. Plaintiff may tax costs.

[1] Of course, our determination that Logan could not bind plaintiff to such a promise does not address the issue of Logan's authority to bind his employer, Profit Systems, to such an agreement with defendants. It is entirely possible that defendants have a remedy against Profit Systems and might well prevail in a suit for contribution against Profit Systems brought in the appropriate forum.