LEASE ACCEPTANCE CORPORATION v ADAMS
LEASE ACCEPTANCE CORPORATION v ABELL

Docket Nos. 255487, 256582. Submitted February 7, 2006, at Detroit.
    Decided August 31, 2006, at 9:00 a.m.

Lease Acceptance Corporation brought four breach of contract
    actions in the Oakland Circuit Court against numerous out-of-
    state defendants. Each defendant had responded to an advertise-
    ment by Emnet Management Systems, Inc., recruiting people for
    technical training in what proved to be a fraudulent scheme. Each
    defendant signed an equipment lease with the plaintiff that
    provided for payments totaling ten to 20 times the value of the
    equipment leased. Pursuant to a forum selection clause in the
    leases, the plaintiff brought the actions in Michigan after the
    defendants defaulted on payments under the leases. The plaintiff
    alleged that it was a victim of the fraudulent scheme, having been
    induced to enter into the leases and pay Emnet inflated amounts
    for the equipment leased to the defendants. The defendants in
    each action moved for summary disposition, asserting the lack of
    personal jurisdiction.

    In Docket No. 255487, the court, Steven N. Andrews, J., denied
    the defendants' motion in one of the four actions, concluding that
    the forum selection clause was sufficient to establish personal
    jurisdiction over the defendants and that the exercise of limited
    jurisdiction was consistent with the requirements of due process.
    The defendants sought leave to appeal. The Court of Appeals,
    DONOFRIO, P.J., and CAVANAGH and JANSEN, JJ., reversed the trial
    court peremptorily in an unpublished order entered October 7,
    2004, concluding that Michigan is not a reasonably convenient
    place for the trial. The plaintiff sought leave to appeal in the
    Supreme Court.

    In Docket No. 256582, the court, Gene Schelz, J., dismissed two
    of the four actions, concluding that personal jurisdiction was
    lacking, that due process guarantees had not been satisfied, that
    the forum selection clause was invalid because it was procured
    through fraud, and that Michigan was not a reasonably convenient
    forum. The plaintiff sought leave to appeal. The Court of Appeals,
    DONOFRIO, P.J., and CAVANAGH and JANSEN, JJ., denied leave to

appeal in an unpublished order entered October 7, 2004. The plaintiff sought leave to appeal in the Supreme Court.

In lieu of granting leave to appeal, the Supreme Court remanded the cases to the Court of Appeals for plenary consideration, including addressing the standard of review for determining whether Michigan is a reasonably convenient place for trial under MCL 600.745(2)(b). 473 Mich 862 (2005). The Court of Appeals subsequently consolidated the appeals.

The Court of Appeals *held*:

1. Pursuant to the clear, bold-faced language of the lease agreements, the defendants consented to personal jurisdiction in Michigan, as permitted by MCL 600.701(3). Because the agreements provide the only basis for the exercise of jurisdiction, however, a Michigan court can entertain the actions only if the requirements of MCL 600.745(2) are also met. These cases require consideration of two of those requirements.

2. The defendants' consent to personal jurisdiction was not invalid under MCL 600.745(2)(c) because it was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means. While Emnet and its owner acted improperly, there is no evidence that the plaintiff engaged in any illegal or improper act in contracting with the defendants for a specific forum. Even if the monetary terms of the leases were unconscionable, the forum selection clause remains effective. In the absence of coercion, mistake, or fraud, each defendant is presumed to know the nature of the document he or she signed and to understand its contents, even if he or she did not read it.

3. With regard to whether Michigan is a reasonably convenient place for trial of the actions within the meaning of MCL 600.745(2)(b), an abuse of discretion standard applies on appeal. As long as the trial court's decision on that issue falls within a principled range of outcomes, the decision must be affirmed. The ultimate conclusion regarding whether personal jurisdiction exists in Michigan under MCL 600.745, however, is reviewed de novo.

4. A determination of what is a reasonably convenient place for a trial requires a determination whether Michigan is a logical venue that is well-suited for the purpose of deciding the action. To evaluate that question, the factors set forth in *Cray v Gen Motors Corp*, 389 Mich 382, 395-396 (1973), for a forum non conveniens analysis provide a court with a useful framework for evaluating whether Michigan is a reasonably convenient place for a trial in each particular case. Not all the factors may be relevant in a particular case, however, and other relevant factors could arise.

Because neither trial court balanced factors of any type in deciding the issue, it is necessary to remand the cases to the Oakland Circuit Court for consideration of what it considers to be the relevant *Cray* factors. On remand, all the cases must be consolidated before the judge who was assigned the first-filed case.

5. A Michigan court's exercise of personal jurisdiction pursuant to a forum selection clause that was validly entered into does not offend the Due Process Clause of the Fourteenth Amendment. The defendants will not be deprived of their day in court by enforcement of this forum selection clause.

Reversed in part, vacated in part, and remanded for further proceedings.

CAVANAGH, J., concurring, agreed with the majority opinion in all respects, but wrote separately to emphasize that the trial court should use the forum non conveniens analysis only as a useful guide, and not as a conclusive framework to determine what is reasonably convenient, and to detail the significant differences that exist between the analyses.

COURTS — PERSONAL JURISDICTION — FORUM-SELECTION CLAUSES — CONSENT TO PERSONAL JURISDICTION.

Personal jurisdiction can be established by consent, but, if the parties' agreement provides the only basis for the exercise of jurisdiction, a Michigan court can entertain an action only if (1) the court has the power under Michigan law to entertain the action, (2) Michigan is a reasonably convenient place for the trial, (3) the agreement about the forum was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means, and (4) the defendant is properly served; the ultimate determination whether personal jurisdiction exists in Michigan under these statutory requirements is review de novo, but an abuse of discretion standard applies to the determination whether Michigan is a reasonably convenient place for the trial; the factors set forth in *Cray v Gen Motors Corp*, 389 Mich 382, 395-396 (1973), for a forum non conveniens analysis provide a court with a useful framework for evaluating whether Michigan is a reasonably convenient place for the trial, although not all the factors may be relevant in a particular case and other factors relevant to the forum's convenience could arise (MCL 600.701[3], 600.745[2]).

*Young & Susser, P.C.* (by *Rodger P. Young*), and *Berger Singerman* (by *Charles H. Lichtman*) for Lease Acceptance Corporation.

*Sakis & Sakis, PLC* (by *Raymond S. Sakis, Dennis J. Grifka,* and *Jason R. Sakis*), for Javier Alcaraz and others.

Before: MURRAY, P.J., and CAVANAGH and TALBOT, JJ.

PER CURIAM.

### I. INTRODUCTION

In Docket Nos. 255487 and 256582, plaintiff Lease Acceptance Corporation (LAC) sued defendants, all individuals who signed equipment leases and subsequently defaulted on the contract payments, for breach of contract in the Oakland Circuit Court.[1] Defendants are all nonresidents of Michigan, residing in western states.[2]

In Docket No. 256582, the trial court held that there was no personal jurisdiction against these defendants, and consequently dismissed the cases. Our Court initially denied leave to appeal, but the Michigan Supreme

---

[1] These appeals involve three of four cases filed by LAC against out-of-state defendants. Although all defendants in each of the cases signed virtually identical leases, LAC filed separate suits against defendants on the basis of their geographic locations. The appeal in Docket No. 256582 involves two cases filed before Judge Gene Schnelz, one that involves defendants from Arizona and Washington (Oakland Circuit Court Docket No. 04-056034-CK), and another that involves defendants from other western states (Oakland Circuit Court Docket No. 04-056026-CK). The two other related cases were assigned to Judge Steven Andrews (Oakland Circuit Court Docket No. 04-056036-CK) and Judge Fred Mester (Oakland Circuit Court Docket No. 04-056035-CK), both involving defendants from various California locations. In a separate order, we consolidated Docket No. 256582 with Docket No. 255487, the appeal from Judge Andrews's ruling.

[2] Specifically, defendants in Docket No. 256582 are residents of either Arizona, Washington, Utah, Texas, Oregon, Colorado, Idaho, New Mexico, Missouri, Kentucky, or Nevada. Defendants in Docket No. 255487 are mainly residents of California.

Court entered an order directing this Court to "address the appropriate standard of review for determining whether Michigan 'is a reasonably convenient place for the trial of the action' within the meaning of MCL 600.745(2)(b)." *Lease Acceptance Corp v Adams,* 473 Mich 862 (2005).

In Docket No. 255487, the trial court entered a well-written opinion and order denying defendants' motion for summary disposition, holding that the forum selection clause in the lease was sufficient to establish personal jurisdiction over defendants and that the exercise of limited jurisdiction was consistent with the requirements of due process. Our Court initially reversed the trial court's order, concluding that there was no personal jurisdiction because Michigan was not a reasonably convenient place for the trial. However, as indicated, the Supreme Court entered an order directing this Court to "address the appropriate standard of review for determining whether Michigan 'is a reasonably convenient place for the trial of the action' within the meaning of MCL 600.745(2)(b)." *Lease Acceptance Corp v Adams, supra* at 862.

We review the question presented by the Supreme Court, as well as the ultimate conclusions reached by the trial courts. Having done so, we vacate the decisions of the trial courts and remand for further proceedings consistent with this opinion.

II. FACTS[3]

LAC is a Michigan corporation that finances equipment leases. In early 2000, LAC financed the transac-

---

[3] Because the material facts and allegations, as well as the contract provisions, are essentially the same in both appeals, we only recite the facts from Docket No. 256582.

tions at issue in the present matter. How these trans-
actions came to be is as follows. Defendants responded
to advertisements in local California newspapers alleg-
edly recruiting people to perform alarm and satellite
television installations. These ads were placed in the
papers by a California corporation and Emnet Manage-
ment Systems, Inc. (Emnet), a company transacting
business in California, through an individual named
Hans Huo. Huo is not a party to this lawsuit and is
incarcerated for charges relating to a fraudulent
scheme that was the impetus of the lower court actions.

The advertisements instructed interested persons to
call a toll-free telephone number located in San Dimas,
California, and, subsequently, Covina, California, where
employees of Emnet offered free training in alarm and
satellite television installations. Defendants were of-
fered a free three-day training seminar in West Covina,
California. Emnet agreed to reimburse defendants for
travel expenses, lodging, and meals and to make com-
mission payments for recruiting individuals into the
installation program.

Huo made misrepresentations to some or all defen-
dants about a scheme to sell computers to defendants
and then hire them to use the computers for work.
Specifically, victims of Huo's scheme were required to
lease a "low end" personal computer, worth less than
$1,000, in order to pick up alarm and antenna installa-
tion orders from an electronic bulletin board operated
by Huo's company. The payments under the lease
typically totaled $10,000 to $20,000, and, according to
Huo, he concealed from the victims the fact that his
company received several thousand dollars from the
leasing companies at the time the victims entered into
the lease and that his company had no orders for alarm
or antenna installation jobs. LAC alleges that it was a

victim of Huo's scheme to defraud because "Emnet, in its invoices, made false representations regarding the cost of the equipment being purchased and induced LAC to enter into the leases and pay Emnet for the equipment listed with inflated values."

The terms set forth in the lease[4] provide, in pertinent part:

> THIS LEASE IS NON-CANCELABLE FOR THE INITIAL TERM. LESSEE UNDERSTANDS AND AGREES THAT NEITHER SUPPLIER NOR ANY AGENT OF SUPPLIER IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.
>
> *    *    *
>
> **1. ORDERING EQUIPMENT.** Lessee hereby requests Lessor to order the Equipment from the Supplier named above, to arrange for delivery to Lessee at Lessee's expense, to pay Supplier for the Equipment after its delivery to Lessee, and to lease the Equipment to Lessee.
>
> *    *    *
>
> **3. DISCLAIMER OF WARRANTIES AND WAIVER OF DEFENSES.** LESSOR, NEITHER BEING THE MANUFACTURER, NOR THE SUPPLIER, NOR A DEALER IN THE EQUIPMENT MAKES NO WARRANTY, EXPRESS OR IMPLIED, TO ANYONE AS TO THE FITNESS, MERCHANTABILITY, DESIGN, CONDITION, CAPACITY, PERFORMANCE OR ANY OTHER ASPECT OF THE EQUIPMENT OR ITS MATERIAL OR WORKMANSHIP AND DISCLAIMS ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS

---

[4] The lease does not identify LAC as a Michigan corporation or indicate that the lease payments would be sent to Michigan. Indeed, the only reference to Michigan within the lease is in the forum and choice of law provisions.

FOR USE OF PURPOSE. LESSOR FURTHER DISCLAIMS ANY LIABILITY FOR LOSS, DAMAGE OR INJURY TO LESSEE OR THIRD PARTIES AS A RESULT OF ANY DEFECTS, LATENT OR OTHERWISE, IN THE EQUIPMENT WHETHER ARISING FROM THE APPLICATION OF THE LAWS OF STRICT LIABILITY OR OTHERWISE. AS TO LESSOR, LESSEE LEASES THE EQUIPMENT "AS IS". LESSEE HAS SELECTED THE SUPPLIER OF THE EQUIPMENT AND ACKNOWLEDGES THAT LESSOR HAS NOT RECOMMENDED THE SUPPLIER. LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, MAINTAIN, ERECT, TEST, ADJUST OR SERVICE THE EQUIPMENT, ALL OF WHICH LESSEE SHALL PERFORM, OR CAUSE TO BE PERFORMED BY QUALIFIED THIRD PARTIES. IF THE EQUIPMENT IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE CLAIM ON ACCOUNT THEREOF SOLELY AGAINST THE SUPPLIER OR MANUFACTURER AND SHALL NEVERTHELESS PAY LESSOR ALL RENT PAYABLE UNDER THE LEASE. LESSEE ACKNOWLEDGES THAT DISSATISFACTION WITH THE EQUIPMENT OR LOSS OF THE EQUIPMENT WILL NOT RELIEVE LESSEE OF ANY OBLIGATION UNDER THIS LEASE, REGARDLESS OF THE CAUSE, LESSEE WILL NOT ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES LETTERS PATENT. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS LEASE FOR TAX OR ACCOUNTING PURPOSES.

\* \* \*

16. GOVERNING LAW, JURISDICTION AND CONSENT TO SERVICE OF PROCESS. THIS LEASE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MICHIGAN. LESSEE CONSENTS TO THE PERSONAL JURISDICTION

OF ANY STATE OR FEDERAL COURT LOCATED IN THE
STATE OF MICHIGAN WITH RESPECT TO ANY ACTION
ARISING OUT OF THE LEASE OR ANY SCHEDULE.

A. DECISION IN DOCKET NO. 256582

Defendants moved to dismiss on the basis of lack of
personal jurisdiction. The trial court held a hearing
regarding defendants' motions on May 19, 2004. After a
lengthy recitation of the facts and the positions of the
parties, the trial court issued its ruling from the bench,
granting defendants' motions for summary disposition
and ruling that (1) plaintiff failed to establish that
jurisdiction was warranted under the long-arm statute,
(2) plaintiff failed to show that due process guarantees
were satisfied, (3) the forum selection clause was invalid
because it was procured through fraud, and (4) Michi-
gan was not a reasonably convenient forum. Specifi-
cally, the trial court held:

> I do find that I have the power to entertain the action
> pursuant to MCL 600.745. I do not feel that this a reason-
> ably convenient place for any trial to be held. I also agree
> that, in my opinion, the agreement was obtained by mis-
> representation, duress and abuse of economic power and
> unconscionable means, based upon my opinion as cited
> before—and as recited already today, I should say.

> And also, that I'm satisfied the defendants are properly
> served. There is no consent here to what occurred in
> connection with this particular matter. [The] Court will
> grant defendants' motion for summary disposition.

B. DECISION IN DOCKET NO. 255487

As noted earlier, the trial court issued a detailed
opinion and order denying defendants' motion for sum-
mary disposition, concluding that personal jurisdiction
existed on the basis of the forum selection clause and

was consistent with due process. The trial court also rejected defendants' argument that plaintiff engaged in fraud by having defendants sign the lease.

However, neither trial court engaged in an analysis of whether Michigan was a reasonably convenient forum, as required by MCL 600.745(2)(b).

### III. ANALYSIS

Defendants' motion for summary disposition was granted in Docket No. 256582 on the basis that the court lacked personal jurisdiction over them, MCR 2.116(C)(1). We review the trial court's ruling on a motion for summary disposition de novo, *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000), as we do the issue whether the trial court has personal jurisdiction over a party, *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 426; 633 NW2d 408 (2001). In deciding a motion for summary disposition brought pursuant to MCR 2.116(C)(1), the court must consider all affidavits and documentary evidence submitted by the parties, MCR 2.116(G)(5), but those facts are considered in the plaintiff's favor, *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995). The plaintiff has the burden of establishing that the court has jurisdiction over the defendant and must only make a prima facie showing of jurisdiction to overcome a motion for summary disposition. *Id.*, citing *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).

A personal jurisdiction analysis involves a two-fold inquiry: (1) do the defendants' acts fall within the applicable long-arm statute and (2) does the exercise of jurisdiction over the defendants comport with the requirements of due process? *W H Froh, Inc v Domanski*,

252 Mich App 220, 226; 651 NW2d 470 (2002). We address these issues seriatim.

### A. LONG-ARM JURISDICTION

The actual grant of personal jurisdiction comes from long-arm statutes that invest courts with the power to exercise personal jurisdiction. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. *Green v Wilson*, 455 Mich 342, 348; 565 NW2d 813 (1997) (opinion by KELLY, J.). Under Michigan law, personal jurisdiction can be established by "[c]onsent, to the extent authorized by the consent and subject to the limitations provided in [MCL 600.745]." MCL 600.701(3).

As just noted, MCL 600.701(3) allows a party to consent to Michigan jurisdiction, and, as we held in *Potomac Leasing Co v French Connection Shops, Inc,* 172 Mich App 108, 112; 431 NW2d 214 (1988), the defendants' agreement in the leases to litigate in Michigan constitutes their consent to personal jurisdiction in this state:

> It has been recognized by both this Court and by the United States Supreme Court that parties may agree, even in advance of litigation, to submit to the personal jurisdiction of a particular forum. See *Burger King Corp v Rudzewicz,* 471 US 462, 472, n 14; 105 S Ct 2174; 85 L Ed 2d 528 (1985); *National Equipment Rental, Ltd v Miller,* 73 Mich App 421, 424; 251 NW2d 611 (1977). As the above-quoted portion of the lease agreement clearly indicates, defendants consented to personal jurisdiction in the courts of the State of Michigan. Accordingly, the trial court correctly ruled that it had personal jurisdiction over defendants

See also *Offerdahl v Silverstein,* 224 Mich App 417, 419; 569 NW2d 834 (1997). Here, as in *Potomac Leasing,*

defendants specifically agreed to litigate in Michigan any claims arising under the lease. The language in that regard is clear and is in boldface type. Therefore, we hold that under MCL 600.701(3) and *Potomac Leasing*, defendants consented to personal jurisdiction in Michigan.

However, in order to satisfy the commands of MCL 600.701(3), we must now turn our attention to whether this agreement otherwise satisfied the requirements of MCL 600.745. MCL 600.745(2) specifically provides that if "the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if *all*" the enumerated requirements are satisfied.[5] (Emphasis added.) Defendants contend that plaintiff cannot satisfy two requirements, that "[t]his state is a reasonably convenient place for the trial of the action" and that "[t]he agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means." MCL 600.745(2)(b) and (c). Unless these elements are satisfied, the parties' contractual agreement to jurisdiction in Michigan is unenforceable.

We disagree with defendants' argument, and the trial court's conclusion in Docket No. 256582, that the forum selection provision contained in the leases was secured through "misrepresentation, duress, the abuse of economic power, or other unconscionable means." MCL 600.745(2)(c). The record is devoid of any evidence that LAC misrepresented the terms of the leases (and in particular the forum selection clause) or abused its

---

[5] As far as we can glean from the limited record, the only basis for the exercise of personal jurisdiction was the lease. Indeed, some of the invoices for the lease payments submitted in the record show a Missouri mailing address. In any event, we will assume for purposes of answering the question directed by the Supreme Court that this is the only basis for jurisdiction.

economic power, or that defendants were under duress at the time they signed their leases. Although defendants argue that LAC is in reality an agent of Emnet, which was operated by Huo, the terms of the leases clearly state that LAC was acting as a lessor only and expressly disclaim any responsibility for the fitness of the computers. Moreover, the leases have a provision giving defendants the opportunity to verify that the equipment was satisfactory. Additionally, plaintiff would not release the funds to Emnet until after plaintiff received an automated message from defendants indicating satisfaction with the product leased. Hence, there was no evidence submitted by defendants establishing that *plaintiff* engaged in any illegal or improper acts in contracting with defendants for a specific forum, and the evidence submitted by plaintiff established otherwise.[6]

However, even if the monetary terms of the lease were unconscionable (i.e., a $10,000 to $20,000 lease for a computer worth $1,000), the lease contains a provision that expressly states that "[i]n the event any provision of the Lease shall be unenforceable then such provision shall be deemed deleted, however, no other provision hereof shall be affected thereby." The forum selection clause, moreover, was printed entirely in conspicuous capital letters. We cannot accept defendants' argument that they simply did not know that the lease contained a forum selection clause because the law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement. *Watts v Polaczyk*, 242 Mich App 600, 604; 619 NW2d 714 (2000).

---

[6] We reiterate that because plaintiff had no agency relationship with Huo, plaintiff is not responsible for Huo's criminal acts.

Therefore, defendants' consent to personal jurisdiction was not invalid under MCL 600.745(2)(c).

Having addressed that prong, we now turn our attention to the issue the Supreme Court ordered us to review, i.e., what is "the appropriate standard of review for determining whether Michigan 'is a reasonably convenient place for the trial of the action' within the meaning of MCL 600.745(2)(b)"? *Lease Acceptance Corp v Adams, supra* at 862. Determining whether Michigan is a "reasonably convenient place for the trial" is part of the legislative criteria for deciding whether jurisdiction over a nonresident can be exercised by a court of this state, and, as we have already noted, questions of personal jurisdiction are legal ones that we review de novo on appeal. *Oberlies, supra* at 426; *W H Froh, Inc, supra* at 225; *In re SZ,* 262 Mich App 560, 564; 686 NW2d 520 (2004). Additionally, interpretation of a statute, particularly when done against a set of undisputed facts, is a question of law reviewed de novo on appeal. *In re Turpening Estate,* 258 Mich App 464, 465; 671 NW2d 567 (2003).

This conclusion does not end our inquiry, however,[7] because the statute requires that the trial court in the first instance determine whether Michigan is a "reasonably" convenient forum for trial. "Reasonably" denotes the balancing of factors, which in turn requires the exercise of some judicial discretion. *Coblentz v Novi,* 475 Mich 558, 575; 719 NW2d 73 (2006). Normally, discretionary issues are reviewed for an abuse of discretion, which is an unusually difficult standard to overcome.

---

[7] The parties have ventured no farther than setting forth the two aforementioned and well-known standards of review. But we think the Supreme Court's order requires answering a more detailed question, i.e., what standard of review is applicable in reviewing a trial court's decision on what is "reasonably convenient"?

See, e.g., *Dacon v Transue,* 441 Mich 315, 329; 490 NW2d 369 (1992). In the somewhat analogous forum non conveniens area of law, we review a trial court's decision for an abuse of discretion. *Radeljak v Daimler-Chrysler Corp,* 475 Mich 598, 603; 719 NW2d 40 (2006); *Miller v Allied Signal, Inc,* 235 Mich App 710, 713; 599 NW2d 110 (1999). But under that doctrine, a court that already has jurisdiction over the parties "presupposes that there are at least two possible choices of forum," *Miller, supra* at 713, and the court must weigh several factors to determine which forum is the better one. Thus, we must reconcile a statute granting judicial discretion in determining what is "reasonably" convenient under the statute with well-settled Michigan law indicating that the ultimate conclusion regarding whether a Michigan court can exercise jurisdiction over a nonresident is a legal one that is subject to de novo review.

In light of both the discretionary language within MCL 600.745(2)(b) and *Coblentz,* we conclude that an abuse of discretion standard applies on appeal from a trial court's decision whether Michigan is a "reasonably convenient" place for trial under MCL 600.745(2)(b). Therefore, as long as the trial court's decision falls within a " 'principled range of outcomes' ", *Coblentz, supra* at 575, quoting *Herald Co, Inc v Eastern Michigan Univ Bd of Regents,* 475 Mich 463, 467; 719 NW2d 19 (2006), the decision on that subissue must be affirmed. However, the ultimate conclusion under MCL 600.745, i.e., whether personal jurisdiction exists in Michigan under this statute, is reviewed de novo.

*Coblentz* involved, among other issues, interpretation of MCL 15.243(1)(f)(*iii*), a section of the Freedom of Information Act. That subsection allows certain financial or commercial type information to be exempt from

disclosure as long as "[a] description of the information is recorded by the public body within a reasonable time after it has been submitted . . . ." Recognizing that the "reasonable time" provision of the statute requires a discretionary decision by the trial court, the Supreme Court held—consistently with longstanding Michigan law on discretionary decisions[8]—that "[b]ecause reasonableness is a discretionary determination, we review the trial court's finding for an abuse of discretion." *Coblentz, supra* at 575.

The statute at issue here contains very similar language, as it requires the trial court to determine whether Michigan is a "reasonably" convenient place for trial, which, like the FOIA provision at issue in *Coblentz*,[9] entails the balancing of certain factors (discussed below) to determine what is reasonable. Hence, because what is reasonable is a discretionary determination, we must review the trial court's analysis of what

---

[8] We note that under the Michigan Consumer Protection Act, as well as several other statutes and court rules authorizing attorney fees, a trial court may award reasonable attorney fees, MCL 445.911(2), and that the discretionary decision of what is reasonable is reviewed for an abuse of discretion. *Smolen v Dahlmann Apartments, Ltd,* 186 Mich App 292, 295; 463 NW2d 261 (1990). See also *Meyer v City of Center Line,* 242 Mich App 560, 575-576; 619 NW2d 182 (2000) (recognizing that the trial court may award reasonable attorney fees pursuant to the Civil Rights Act, MCL 37.2802, and that the decision is reviewed for an abuse of discretion), *Featherston v Steinhoff,* 226 Mich App 584, 592-593; 575 NW2d 6 (1997) (recognizing that a trial court may award reasonable attorney fees pursuant to MCR 3.206(C)(2) for the defense of a custody action and that the decision is reviewed for an abuse of discretion), and *Phinney v Perlmutter,* 222 Mich App 513, 560-561; 564 NW2d 532 (1997) (recognizing that the trial court may award reasonable attorney fees pursuant to the Whistleblowers' Protection Act, MCL 15.364, and that the decision is reviewed for an abuse of discretion).

[9] See also *Herald Co, Inc v Eastern Michigan Univ Bd of Regents,* 475 Mich 463; 719 NW2d 19 (2006) (concluding that a more detailed statutory balancing test under FOIA also entails an abuse of discretion standard on appeal).

is a "reasonably convenient" for an abuse of discretion. We now consider what factors are relevant to determining whether Michigan is a "reasonably convenient" place for trial.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). The best source for determining legislative intent is the specific language of the statute, *id.,* because the Legislature is presumed to have intended the meaning it plainly expressed, *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

As set forth above, the statute requires courts to determine what is a "reasonably convenient" place for the trial. MCL 600.745(2)(b).[10] What is meant by "reasonably convenient" is not clear, because that phrase is not defined in the statute. Hence, we turn to the dictionary. *Halloran, supra* at 578. *Random House Webster's Unabridged Dictionary* (1998) defines "reasonable" as "agreeable to reason or sound judgment; logical[.]" The term "convenient" means "suitable or agreeable to the needs or purpose; well-suited with respect to facility or ease in use; favorable, easy, or comfortable for use." *Id.* Accordingly, a determination

---

[10] This statutory provision emanated from a recommendation of the Michigan Law Revision Commission, which in turn was recommended by the National Conference of Commissioners on Uniform State Laws, which had approved a Model Choice of Forum Act. See *First Nat'l Monetary Corp v Chesney,* 514 F Supp 649, 655 (ED Mich, 1980). Although several states adopted the uniform act, in 1975 the national conference withdrew its recommendation because of, among other things, lack of adoption among the states.

of what is a "reasonably convenient" place for trial requires a determination whether Michigan is a logical venue that is well-suited for the purpose of deciding this action.

Michigan case law and the definitions provide little to no guidance on the type of factors a court should consider to determine whether the exercise of jurisdiction is "reasonably convenient" for the parties, i.e., whether Michigan is a logical venue that is well-suited for deciding this case. We can, however, look to the analogous forum non conveniens analysis for guidance. The basic principle of forum non conveniens is that a court may resist impositions of its jurisdiction even if that jurisdiction is properly invoked. *Manfredi v Johnson Controls, Inc*, 194 Mich App 519, 521; 487 NW2d 475 (1992). After a party moves for dismissal on the basis of forum non conveniens, the court must consider two things: (1) whether the forum is inconvenient and (2) whether a more appropriate forum exists. If no more appropriate forum exists, the court cannot resist jurisdiction. *Id.* at 527.

The Michigan Supreme Court articulated criteria to aid a trial court in determining whether to deny jurisdiction on the basis of forum non conveniens. These criteria are known as the "*Cray* factors" because they were first set forth in *Cray v Gen Motors Corp*, 389 Mich 382, 395-396; 207 NW2d 393 (1973). Under *Cray*, a trial court must consider the plaintiff's choice of forum and "weigh carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state." *Id.* at 396. The *Cray* factors are divided into three groups: (1) the private interest of the litigants, including the location of the parties, ease of access to sources of proof, the distance from the incident giving rise to the litigation, and other practical prob-

lems that contribute to the ease, expense, and expedition of the trial; (2) matters of public interest, including consideration of which state law will govern the case, potential administrative difficulties, and people concerned by the proceeding; and (3) reasonable promptness on the part of the defendants in raising the issue of forum non conveniens dismissal. *Id.* These factors were recently reaffirmed in *Radeljak, supra* at 605-606, in which the Court set forth these three factors and their subparts:

"1. The private interest of the litigant.

"a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;

"b. Ease of access to sources of proof;

"c. Distance from the situs of the accident or incident which gave rise to the litigation;

"d. Enforcibility [sic] of any judgment obtained;

"e. Possible harassment of either party;

"f. Other practical problems which contribute to the ease, expense and expedition of the trial;

"g. Possibility of viewing the premises.

"2. Matters of public interest.

"a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

"b. Consideration of the state law which must govern the case;

"c. People who are concerned by the proceeding.

"3. Reasonable promptness in raising the plea of *forum non conveniens.*" [*Id.,* quoting *Cray, supra* at 396.]

Not all these factors may be relevant in a particular case, and there may well be cases in which other factors relevant to the convenience of the forum could arise.

But we believe that the *Cray* factors provide a court
with a framework for evaluating whether Michigan is a
reasonably convenient place for a trial in each particu-
lar case, for the convenience of the parties is the
underlying goal of both the statute and the common-law
doctrine.[11]

At the outset we emphasize that the Legislature, this
Court, and the United States Supreme Court have
declared that forum selection clauses are generally
valid, provided they are enforced against a party bound
by the contract and as long as they are freely entered
into and neither unreasonable nor unjust. See *Burger
King Corp*, *supra* at 472 n 14; *Offerdahl*, *supra* at
419-420; *Potomac Leasing*, *supra* at 112; MCL
600.701(3); MCL 600.745. As the lease agreement
quoted earlier clearly indicates, defendants consented
to personal jurisdiction in the courts of Michigan.

At this point, however, we can proceed no further on
this issue. Quite naturally, neither trial court addressed
the relevant *Cray* factors in determining whether
Michigan was a reasonably convenient forum. Nor did
either court engage in any balancing of factors of any
type in deciding this statutory issue.[12] Therefore, we
cannot on this record determine whether an abuse of
discretion occurred on this precise issue, and we must
remand this statutory issue[13] to the Oakland Circuit

[11] We do recognize, however, that what is "inconvenient" requires a
greater showing than what is "reasonably convenient." Trial courts can
take that fact into account in determining what factors are relevant in
deciding this issue.

[12] Judge Andrews did, however, engage in a somewhat similar analysis
when deciding the constitutional due process question.

[13] We agree with everything articulated in the concurring opinion, and
believe that the points made in that opinion have been addressed
throughout this opinion. Specifically, we have recognized that the forum
non conveniens doctrine is a common-law one, while we are addressing

Court for consideration of what it considers to be the relevant *Cray* factors in these cases.

### B. DUE PROCESS

Turning to the constitutional claims, we reject defendants' argument that a Michigan court's exercise of personal jurisdiction offends the Due Process Clause of the Fourteenth Amendment of the United States Constitution. State and federal courts are virtually uniform in the conclusion that enforcement of a forum selection clause that was validly entered into does not violate due process as long as a party will not be deprived of its day in court. A good summary of the law governing this issue was written by the Seventh Circuit Court of Appeals in *Heller Financial, Inc v Midwhey Powder Co, Inc,* 883 F2d 1286, 1290-1291 (CA 7, 1989):

> Challenges to personal jurisdiction may be waived by either express or implied consent. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985). In the commercial context, parties, for business or convenience reasons, frequently "stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id. See also National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315-16, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964). Such a forum-selection clause should control unless there is a "strong showing that it should be set aside." *The Bremen v. Zapata Off-Shore Co,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). *Cf. Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 2249-50, 101 L.Ed.2d 22 (1988) (concurring opinion) (regarding a motion to transfer under 28 U.S.C. § 1404(a), forum-selection clause is given controlling weight "in all but the most exceptional cases"). Thus, absent a showing that trial in the "contractual forum

---

an undefined statutory term, and that use of the factors under this doctrine is not mandatory or exclusive, but a useful framework to assist trial courts in deciding this issue.

will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court . . . there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *The Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917; *see also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir.1984). And where "forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' *The Bremen v. Zapata Off-shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), their enforcement does not offend due process." *Burger King,* 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14.

See also *Ameritas Investment Corp v McKinney,* 269 Neb 564, 570-571; 694 NW2d 191 (2005); *Michiana Easy Livin' Country, Inc v Holten,* 168 SW3d 777, 792-793 (Tex, 2005); *Kennecorp Mortgage Brokers, Inc v Country Club Convalescent Hosp, Inc,* 66 Ohio St 3d 173, 175-176; 610 NE2d 987 (1993).[14] We are confident that defendants will not be deprived of their day in court by the enforcement of the contract's forum selection clause.[15]

Reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

CAVANAGH, J. (*concurring*). I concur with the majority opinion in all respects, but would emphasize that in determining whether Michigan is a reasonably convenient place for the trial, the trial court should only use

---

[14] Other courts have simply held that a valid forum selection clause constitutes a waiver of personal jurisdiction issues for purpose of a due process analysis. *TruServ Corp v Flegles, Inc,* 419 F3d 584, 589 (CA 7, 2005), relying in part on *Burger King, supra* at 472 n 14.

[15] On remand the clerk for the Oakland Circuit Court shall consolidate all these cases before the judge who was assigned the first-filed case. MCR 8.111(D)(1); MCR 7.216(A)(7).

the forum non conveniens analysis as a useful guide and not as a conclusive framework to determine what is "reasonably convenient." See *Cray v Gen Motors Corp*, 389 Mich 382, 395-396; 207 NW2d 393 (1973). Significant to bear in mind with regard to the differences in the analyses are that (1) the forum non conveniens doctrine is a common-law discretionary doctrine, not a statutory directive; (2) MCL 600.745(2) applies in instances in which the parties agreed by contract to submit any disputes to this state's jurisdiction while the forum non conveniens doctrine applies in instances in which the plaintiff unilaterally selected the forum; (3) when the forum non conveniens doctrine is applicable, two jurisdictions are available, but that may not be true in instances in which MCL 600.745(2) is applicable; and (4) the standard to consider in a forum non conveniens analysis is whether the forum is inconvenient, but the standard under MCL 600.745(2) is whether the forum is "reasonably convenient," an arguably less burdensome standard.