*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALVIN SHERIDAN,

        Plaintiff-Appellant,

v

TITAN INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
September 10, 2019

No. 342704
Wayne Circuit Court
LC No. 16-010604-NF

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

In this action for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff, Calvin Sheridan, appeals from the trial court's order granting summary disposition to defendant, Titan Insurance Company (Titan). We affirm.

## I. BACKGROUND

In June 2015, Sheridan was injured in a hit-and-run motor vehicle accident while he was walking down the road. Sheridan suffered injuries to his shoulders, arms, left knee, neck, and head, and he was hospitalized as a result of the accident. Because Sheridan did not have no-fault automobile insurance, and because the driver of the motor vehicle could not be found, Sheridan submitted his claims for PIP benefits to the Michigan Automobile Insurance Placement Facility (MAIPF) for coverage under the Michigan Assigned Claims Plan (MACP). Titan was assigned as Sheridan's servicing insurer.

Sheridan submitted his application for PIP benefits, and he later submitted documentation of attendant care services he received from his sister, Bertha Wilson, and his brother, Larry Sheridan. Sheridan's medical records revealed that he failed to disclose his prior medical conditions in his application for PIP benefits. These records also revealed that Sheridan was hospitalized for some of these prior medical conditions at the same time he was supposedly receiving attendant care services from his siblings. Sheridan filed this lawsuit after Titan refused

-1-

to pay PIP benefits based on Sheridan's misrepresentations. Titan filed a motion for summary disposition under MCR 2.116(C)(10), arguing that Sheridan's omissions and false statements constituted fraudulent insurance acts under MCL 500.3173a(4),[1] and thus, he was ineligible to receive PIP benefits for his claim. Sheridan responded by contending that he was confused by the questions in the application for PIP benefits, that he did not believe his prior medical conditions were relevant to the injuries he sustained in the accident, and that he may have mistakenly put the wrong dates on the attendant care forms. Thus, Sheridan argued that he did not commit a fraudulent insurance act under MCL 500.3173a(4). The trial court granted Titan's motion for summary disposition, and this appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a motion for summary disposition. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008). A motion for summary disposition under MCR 2.116(C)(10) should be granted "if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law." *Id*. at 424-425 (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. at 425.

Further, issues that require the interpretation of a statute are questions of law that are reviewed de novo. *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017). In *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012), our Supreme Court provided the following longstanding principles of statutory interpretation:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [Quotation marks, citation, and brackets omitted.]

---

[1] At the time Titan filed its motion for summary disposition, the fraudulent insurance act provision was provided in MCL 500.3173a(2). MCL 500.3173a has since been amended. See 2019 PA 21 (effective June 11, 2019). The only relevant change to the statute for purposes of this appeal is that the fraudulent insurance act provision moved from subsection (2) to subsection (4) of the statute. MCL 500.3173a(4).

III. ANALYSIS

Sheridan argues that the trial court erred in granting Titan's motion for summary disposition because there is a genuine dispute of material fact regarding whether Sheridan knowingly presented, or caused to be presented, materially false information in support of his claim for PIP benefits—specifically, information regarding his prior medical conditions and attendant care services. We disagree.

MCL 500.3173a states, in relevant part:

> (1) The Michigan automobile insurance placement facility shall review a claim for personal protection insurance benefits under the assigned claims plan, shall make an initial determination of the eligibility for benefits under this chapter and the assigned claims plan, and shall deny a claim that the Michigan automobile insurance placement facility determines is ineligible under this chapter or the assigned claims plan. . . .

> \* \* \*

> (4) A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility, or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of personal protection insurance benefits under the assigned claims plan.

In *Candler*, 321 Mich App at 779-780, this Court held that a person commits a "fraudulent insurance act" under MCL 500.3173a(4) when

> (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim.

The trial court did not err in granting Titan's motion for summary disposition. The record shows that Sheridan presented, or caused to be presented, false written statements in support of his claim for PIP benefits. In his application[2] for PIP benefits, Sheridan stated that he

---

[2] In *Candler*, 321 Mich App at 778 n 4, this Court held that "the request/*application* to the MAIPF is nevertheless a *claim* for owed benefits." (First emphasis added.) Therefore, for

suffered injuries to his shoulders, back, neck, ribs, legs, and elbows as a result of the motor vehicle accident. When asked whether he had previously suffered from any of these injuries, or whether he had "any medical conditions" before the accident, Sheridan answered, "No," and "N/A" for not applicable, respectively. Hospital records reveal, however, that Sheridan suffered a left knee injury in a slip-and-fall accident in June 2013 and underwent total knee replacement surgery in August 2013.

Further, Sheridan submitted documentation for attendant care services he received from July 12, 2015 through July 14, 2015; August 3, 2015 through August 7, 2015; July 19, 2016 through July 22, 2016; and October 1, 2016 through October 4, 2016. However, at the same time Sheridan was supposedly receiving attendant care services, he was hospitalized for various medical conditions, including congestive heart failure, respiratory failure, pancreatitis, and other conditions—most of which were unrelated to the motor vehicle accident. It was impossible for Sheridan to be receiving attendant care services from family members at the same time he was hospitalized. These contradictory submissions formed the basis of Titan's refusal to pay PIP benefits to Sheridan.

Sheridan responds that, at his deposition, he explained that he did not disclose his prior knee injury and surgery because his knee had healed by the time of the accident, and he was not experiencing any knee pain leading up to the accident. Sheridan also testified that he was "confused" by the wording of some of the questions on his application for PIP benefits and that he did not knowingly submit false information regarding his prior medical conditions. With respect to his submissions for attendant care services, Sheridan testified that the dates he received those attendant care services were, to his knowledge, accurate, but he may have put the wrong dates down by "mistake" when filling out the attendant care forms.

Sheridan's "confusion" and "mistakes" regarding his claim for PIP benefits are unavailing. Sheridan signed his application for PIP benefits—acknowledging the veracity of his statements, the information in the application, and the application's fraud warning reiterating the penalty for fraudulent insurance acts under MCL 500.3173a(4)—and he confirmed his signing of the application at his deposition. See e.g., *Lease Acceptance Corp v Adams*, 272 Mich App 209, 221; 724 NW2d 724 (2006) ("[T]he law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement."); see also *Christensen v Christensen*, 126 Mich App 640, 645; 337 NW2d 611 (1983) ("[A] person who signs and executes an instrument without inquiring as to its contents cannot have the instrument set aside on the ground of ignorance of the contents."). Also, the questions on the application were clear and unambiguous. The questions read: "Were you injured in the accident?" "Did you already suffer from any of these injuries before the accident?" "Please list any medical conditions you had and/or medications you were taking before this accident." "Had you sought treatment for any prior conditions before this accident?" In fact, Sheridan submitted his application for PIP

---

purposes of MCL 500.3173a, the difference between an "application" and a "claim" is immaterial. *Id*.

benefits with the help of counsel, so it is unreasonable to believe that he was confused by the relatively straightforward questions being asked, or that he was unaware that the information he was submitting was false. *Allison*, 481 Mich 425 ("There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party.").

Moreover, while it is possible that Sheridan may have provided the wrong dates for some of the attendant care services that he received, it is unreasonable to suggest that he mistakenly provided four separate date ranges for attendant care services *at the same time he was hospitalized*. In fact, Sheridan testified that he and his sister would generally fill out the attendant care forms and sign them the same day, or the day after if they forgot. Given these facts, no reasonable jury could conclude that Sheridan mistakenly—rather than fraudulently— submitted false information regarding his prior medical conditions and the attendant care services he received. See *Candler*, 321 Mich App at 781-782 (noting that, "that to create a genuine issue of material fact and defeat a motion for summary disposition under MCR 2.116(C)(10), there must be sufficient evidence to permit *a reasonable jury* to find in the nonmoving party's favor") (citation omitted). Accordingly, there is no genuine dispute of material fact that Sheridan presented false written statements in support of his claim for PIP benefits. *Allison*, 481 Mich 425; *Candler*, 321 Mich App at 781-782.

The record establishes that Sheridan both (1) knowingly omitted material information regarding his prior medical conditions in submitting his application for PIP benefits, and (2) knowingly made false, material statements regarding attendant care services he received. Sheridan testified that he failed to disclose his left knee injury and surgery in his application for PIP benefits, despite medical records and his own testimony acknowledging the injury and surgery. Plaintiff also explained the recording process he used to keep track of the attendant care services he received, testifying that his sister and brother would check off the tasks they completed for Sheridan, and then Sheridan would write the tasks on the attendant care forms. All three would typically sign the forms, usually the same day, but sometimes the day after. No reasonable jury could accept Sheridan's contention that he mistakenly recorded the wrong dates of receiving attendant care services, especially considering that he would normally fill out the forms and sign them within a day of receiving those services. *Allison*, 481 Mich 425; *Candler*, 321 Mich App at 781-782.

There is also no genuine issue of material fact that Sheridan's omissions and false statements are material. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014) (citation omitted). Sheridan's prior medical conditions directly relate to whether he required attendant care services for his injuries from the motor vehicle accident. Therefore, Sheridan's failure to disclose his prior medical conditions, as well as his false statements regarding the dates he received attendant care services, are reasonably relevant to Titan's investigation into the claim for PIP benefits. *Id*. Accordingly, there is no genuine issue of material fact that Sheridan knowingly presented, or caused to be presented, materially false statements in support of his claim for PIP benefits so as to constitute a "fraudulent insurance act" under MCL 500.3173a(4). *Candler*, 321 Mich App at 778-782 (providing the requirements for proving a fraudulent insurance act under MCL 500.3173a(4)).

Sheridan argues, however, that (1) "there is no direct evidence that [Sheridan] knew, or was part of any fraud," and that (2) both [Titan] and the trial court have failed to acknowledge the "intent to defraud" requirement for proving a fraudulent insurance act under MCL 500.3173a(4). First, "fraud may be established by circumstantial evidence." *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996). Here, the facts and circumstances surrounding Sheridan's application for PIP benefits—his failure to disclose his prior medical conditions, and his erroneous submissions of the dates he received attendant care services—establish that Sheridan knowingly presented materially false information in support of his claim for PIP benefits. *Id*. at 458-460. Second, the plain language of MCL 500.3173a(4) does not require that the person submitting the false information have an intent to defraud. Nor does this Court's decision in *Candler*, 321 Mich App at 772-782, discuss an intent element needed to prove a fraudulent insurance act under MCL 500.3173a(4). Therefore, Sheridan's arguments are unpersuasive.

Plaintiff also relies on *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; 922 NW2d 154 (2018), and other, unpublished cases, in support of his argument that "there remains a genuine issue of material fact as to whether [Sheridan] committed fraud." The issue in *Meemic* was whether the plaintiffs committed fraud under the fraud-exclusion clause of their no-fault automobile insurance policy. *Id*. at 479-484. This case, on the other hand, is distinguishable from *Meemic* because it involves a claim for PIP benefits under the MACP. See *Candler*, 321 Mich App at 780 n 6 (noting that cases involving a claimant's fraudulent acts under an insurance policy contract are not relevant to cases involving claims brought under the MACP). In addition, unpublished opinions are not precedentially binding. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), citing MCR 7.215(C)(1). Therefore, Sheridan's reliance on these cases is unhelpful.

Finally, Sheridan argues that because no contractual relationship existed between Sheridan and Titan—given that Titan was assigned as Sheridan's servicing insurer through the MACP—"the only available penalties against [Sheridan] are those expressly stated in the No-Fault Act, i.e., attorney fees and costs for making a PIP claim that was 'in some respect fraudulent' in violation of MCL 500.3148(2)." Sheridan also contends that even if he submitted materially false information in support of his claim for PIP benefits, his claim could not be dismissed entirely because mere "inaccuracies in the forms and sheets submitted for payment . . . does not preclude compensation of ANY claim for payment." These contentions are erroneous because MCL 500.3173a(4) specifically states, "A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of [PIP] benefits under the assigned claims plan." This Court in *Candler*, 321 Mich App at 782, confirmed that "[b]ecause there is no genuine issue of material fact that plaintiff's claim for benefits was supported by a fraudulent insurance act, the claim is thereby ineligible for payment under the MACP." Accordingly, Sheridan's fraudulent insurance acts render him ineligible for payment of

PIP benefits under the MACP, and the trial court did not err in granting Titan's motion for summary disposition on that basis.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel