# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN DOE, Minor, by Next Friend, MOTHER OF JOHN DOE,

  Plaintiff-Appellee,

and

CHRISTOPHER J. KEANE and ROBERT S. HARRISON,

  Appellees,

v

RENEE BOYLE and MICHAEL HAND,

  Defendants,

and

STATE OF MICHIGAN, DEPARTMENT OF HUMAN SERVICES, and DEPARTMENT OF HUMAN SERVICES OF WEXFORD-MISSAUKEE COUNTIES,

  Defendants-Appellees,

and

THOMAS E. WOODS,

  Appellant.

FOR PUBLICATION
September 22, 2015
9:00 a.m.

No. 320102
Ingham Circuit Court
LC No. 07-000906-NO

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Appellant, Thomas Woods ("Woods"), appeals as of right following the circuit court's entry of final judgment. In particular, Woods challenges the circuit court's earlier order denying his request to be compensated for services rendered as a court-appointed guardian ad litem. We reverse and remand for further proceedings consistent with this opinion.

I.  FACTS AND PROCEDURAL HISTORY

On July 14, 2006, John Doe ("Doe"), a 5-year-old minor, was at the beach in Traverse City, Michigan. Defendant Michael Hand ("Hand"), a 13-year-old minor, was also at the beach. Hand asked Doe to accompany him to a public restroom. While inside the public restroom, Hand sexually assaulted Doe. At the time of the incident, Hand was a ward of the state of Michigan, and was living with foster-care provider defendant Renee Boyle ("Boyle"). The parental rights of Hand's natural parents had been previously terminated.

Doe, by his mother as next friend ("plaintiff"), sued Hand, Boyle, the state of Michigan, the Michigan Department of Human Services ("DHS"),[1] and DHS of Wexford-Missaukee Counties in the Ingham Circuit Court. The complaint was filed on July 6, 2007. To proceed with her claims against minor child Hand, plaintiff filed an ex parte motion for the appointment of a guardian ad litem for Hand pursuant to MCR 2.201(E)(1)(c).

On October 12, 2007, the circuit court entered an order dismissing defendants state of Michigan, DHS, and DHS of Wexford-Missaukee Counties from this action without prejudice.[2] A hearing on plaintiff's motion to appoint a guardian ad litem for Hand was held on January 23, 2008.  The attorney for plaintiff and Doe noted that Hand needed a next friend or guardian ad litem since he was a minor.  The circuit judge remarked, "I don't know who to suggest to appoint.  I don't know anybody that does this sort of thing.  We'll find somebody." Woods happened to be present in the courtroom for an unrelated matter.  The circuit judge apparently knew Woods, and asked him whether he would be willing to serve as Hand's guardian ad litem.  Woods agreed.  The court entered an order appointing Woods as guardian ad litem pursuant to MCR 2.201(E)(1)(c).  Woods entered his appearance as "guardian ad litem and attorney" for Hand.  Woods then filed answers to plaintiff's first and second amended complaints on behalf of Hand.

Meanwhile, plaintiff filed a separate action for declaratory relief. In this separate action, plaintiff sought a declaration that Boyle's homeowner's insurer, Citizens Insurance Company ("Citizens"), was obligated to defend Boyle and indemnify her for any liability that she might incur as a result of plaintiff's claims. Citizens moved for summary disposition. Woods appeared in the declaratory-judgment action as guardian ad litem for Hand, siding with plaintiff and arguing for insurance coverage. Woods concurred in plaintiff's opposition to Citizen's motion for summary disposition. The circuit court ultimately granted summary disposition in favor of Citizens because there was a sexual-molestation exclusion in Boyle's insurance policy, and this

---

[1] DHS is now known as the Department of Health & Human Services. See Executive Order No. 2015-4.

[2] Plaintiff later sued DHS and DHS of Wexford-Missaukee Counties in the Court of Claims, where her causes of action were dismissed on the grounds of governmental immunity and failure to state a claim on which relief could be granted. This Court affirmed. *Doe v Dep't of Human Servs*, unpublished opinion per curiam of the Court of Appeals, issued December 8, 2009 (Docket No. 285274).

Court affirmed. *Doe v Citizens Ins Co*, 287 Mich App 585, 586-588; 792 NW2d 80 (2010). Boyle subsequently filed for bankruptcy, resulting in an automatic stay of this action until Boyle's discharge from bankruptcy in December 2009.

On July 23, 2010, after several months with no additional action by plaintiff's attorneys, Woods filed a motion for fees and costs. Relying on MCR 3.916(D), Woods asserted that he was entitled to recover his expenses and costs, including attorney fees, from DHS in the amount of $20,720.79. Woods attached detailed billing statements to his motion. DHS opposed the motion, arguing that MCR 3.916(D) applied only in juvenile-delinquency and child-protective proceedings, and not in general tort litigation such as the instant case. DHS contended that the Superintendent of the Michigan Children's Institute ("MCI")—and not Woods—served as Hand's guardian because Hand was a ward of the state. Alternatively, DHS argued that it could not be held responsible for paying Woods's fees because (1) it was dismissed from the lawsuit more than two years earlier, (2) it never received notice of Woods's appointment as guardian ad litem, (3) Woods was not appointed as Hand's attorney, but merely as Hand's guardian ad litem, and (4) Woods waited too long to file his motion for fees.

In reply, Woods pointed to the language of MCR 2.201(E)(1)(c), which provides, in part, that "[i]f the minor or incompetent person does not have a conservator to represent the person as defendant, the action may not proceed until the court appoints a guardian ad litem, *who is not responsible for the costs of the action* unless, by reason of personal misconduct, he or she is specifically charged costs by the court." (Emphasis added.) Woods asserted that this language entitled him, as Hand's guardian ad litem, to recover his costs and expenses. According to Woods, it was disingenuous for DHS to argue that it never received notice of his appointment because DHS was present at the time and had actual knowledge of his appointment as guardian ad litem. Woods also pointed out that, because no one had been nominated to serve as Hand's guardian ad litem within 21 days after service of process, the circuit court was entitled to sua sponte appoint a guardian ad litem of its own choice, no nomination was necessary, and the parties were not entitled to advance notice. MCR 2.201(E)(2)(a)(*iii*).

Woods acknowledged that the Superintendent of MCI serves as "guardian" for wards of the state under MCL 400.203(1). But he argued that the term "guardian" in MCL 400.203(1) and MCL 712A.18 is separate and distinct from the term "guardian ad litem" in MCR 2.201(E). As for DHS's contention that Woods's motion was untimely, Woods argued that there was no court rule or statute limiting the amount of time in which he was required to request his fees and costs. Woods requested an additional $7,246.12 in attorney fees for prosecuting the motion for fees and costs.

On January 5, 2011, the circuit court issued a written opinion and order denying Woods's motion seeking fees and costs from DHS. Instead, the circuit court ruled that plaintiff was responsible for paying Woods's costs as an element of taxable costs, but plaintiff was not responsible for Woods's legal fees. Woods moved for reconsideration, arguing that he was entitled to attorney fees since his appointment as guardian ad litem had at all times contemplated the rendering of associated legal services for Hand. Woods also argued that if he could not recover his costs and expenses from DHS or plaintiff, then he would be left without a remedy. He argued that it would be contrary to Michigan law to require a court-appointed guardian ad

litem to serve without compensation. Plaintiff's attorneys separately moved for reconsideration of the January 5, 2011 order.

On March 22, 2011, the circuit court denied the motions, reiterating that DHS was not responsible for the payment of Woods's fees and observing that neither Woods nor plaintiff's attorneys had shown any palpable error warranting reconsideration. About a week later, the circuit court stated that it had erroneously denied the motion of plaintiff's attorneys for reconsideration without affording them an opportunity to be heard. The court set aside its order of March 22, 2011, and scheduled a hearing on the matter. Woods filed a motion requesting that he be discharged from any further duties as guardian ad litem and released from the case. He submitted a proposed order to this effect under the 7-day rule of MCR 2.602(B)(3). Plaintiff objected to the proposed order, arguing that Woods should be required to continue as Hand's guardian ad litem. Following a hearing, the circuit court granted the motion of plaintiff's attorneys for reconsideration of the March 22, 2011 order. On May 27, 2011, the court issued an order to this effect, providing that Woods was not entitled to any compensation whatsoever, and clarifying that Woods's motion for fees and costs was being denied in full.

On May 18, 2011, plaintiff moved for summary disposition with respect to her remaining intentional tort claims against Hand. Woods continued as Hand's guardian ad litem since he was not relieved of his duties by court order and filed a response to plaintiff's motion for summary disposition on June 13, 2011. On June 24, 2011, the parties and court signed a stipulated order discharging Woods from the case and releasing him from any further obligations as Hand's guardian ad litem since Hand had reached the age of majority. On July 19, 2011, the circuit court entered a consent judgment against Hand in the amount of $1,000,000. Hand stipulated to the entry of the judgment. Then, on July 22, 2011, the court curiously entered an order dismissing plaintiff's claims against Hand with prejudice and without costs to either party.

On July 27, 2011, Woods entered an appearance as the former guardian ad litem for Hand. On August 12, 2011, Woods filed a claim of appeal in this Court, challenging the circuit court's denial of his request for fees and costs. Plaintiff and DHS moved to dismiss Woods's claim of appeal, arguing that the circuit court's order of July 22, 2011, was not a final order appealable by right. On November 2, 2011, this Court dismissed Woods's claim of appeal for lack of jurisdiction. *Doe v Boyle*, unpublished order of the Court of Appeals, entered November 2, 2011 (Docket No. 305627). This Court noted that, assuming the July 19, 2011 order was the final order, Woods had not appealed it within 21 days as required by MCR 7.204(A)(1)(a). This Court denied Woods's motion for reconsideration on December 21, 2011. *Doe v Boyle*, unpublished order of the Court of Appeals, entered December 21, 2011 (Docket No. 305627).

In January 2012, Boyle filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff's claims against her should be dismissed because they were barred by her bankruptcy discharge. Plaintiff argued that the motion was unnecessary because her claims against Boyle had already been administratively dismissed as a result of the bankruptcy proceedings. Plaintiff also argued that her attorneys had not received timely notice of Boyle's motion. Woods filed a brief, noting that plaintiff continued to maintain that Boyle was a party to the litigation even after the bankruptcy discharge. Woods argued that plaintiff should be estopped from making the new argument that her claims against Boyle had already been administratively dismissed. Woods also filed his own motion on March 26, 2012,

requesting that the circuit court enter a final order closing the case. At oral argument, on April 4, 2012, the circuit court stated that Boyle had already been dismissed from the case at the time of her discharge from bankruptcy and remarked that Woods was seeking the entry of a "final order" so that he could "have a little crack at the Court of Appeals." On May 22, 2012, the court denied Woods's motion for the entry of a final order closing the case.

On June 12, 2012, Woods filed an application for leave to appeal in this Court. This Court granted the application on March 28, 2013. *Doe v Boyle*, unpublished order of the Court of Appeals, entered March 28, 2013 (Docket No. 310725). After plenary review, this Court reversed the circuit court's denial of Woods's motion for the entry of a final order closing the case. *Doe v Boyle*, unpublished opinion of the Court of Appeals, issued December 10, 2013 (Docket No. 310725). This Court ruled that although Boyle's discharge from bankruptcy had rendered unenforceable any attempt to collect from her, it had not actually extinguished the pending state-court action. *Id*. at 4. This Court continued, "The matter against Boyle having not been adjudicated through a written order of the trial court, the trial court erred by finding that the instant case was closed and in refusing to enter a written order dismissing defendant Boyle from the case." *Id*. This Court remanded the matter to the circuit court for entry of a final order closing the case. *Id*. at 5. On remand, the parties stipulated to the entry of a final judgment dismissing all remaining claims and closing the case. Woods timely filed his claim of appeal in this Court on January 29, 2014.

## II.  STANDARD OF REVIEW

We review a trial court's decision regarding whether to grant an award of attorney fees and costs for an abuse of discretion. See *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. We review de novo the proper application and interpretation of a court rule. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014). Similarly, we review de novo issues regarding the proper interpretation and application of a statute. *Detroit Pub Sch v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).

## III.  GUARDIAN AD LITEM COSTS AND EXPENSES

Woods argues that he was entitled to compensation for the services he rendered as guardian ad litem and that the circuit court abused its discretion when it determined that DHS was not required to pay for his costs and expenses.  We agree.

Woods was entitled to compensation for the services he rendered as guardian ad litem, and DHS is responsible for payment of Woods's costs and expenses. Woods acted as Hand's guardian ad litem in the circuit court. *Black's Law Dictionary* (10th ed) defines the term "guardian ad litem" as a "guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." 3 Michigan Pleading & Practice (2d ed), § 28:1, p 6, defines the term "guardian ad litem" as "a guardian appointed to represent a ward in legal proceedings in which the ward is a party defendant." (Citations omitted.) Woods was appointed guardian ad litem by the court pursuant to MCR 2.201(E)(2)(a), which provides:

(a) Appointment of a next friend or guardian ad litem shall be made by the court as follows:

(i) if the party is a minor 14 years of age or older, on the minor's nomination, accompanied by a written consent of the person to be appointed;

(ii) if the party is a minor under 14 years of age or an incompetent person, on the nomination of the party's next of kin or of another relative or friend the court deems suitable, accompanied by a written consent of the person to be appointed; or

(iii) if a nomination is not made or approved within 21 days after service of process, on motion of the court or of a party.

Since Woods was appointed to act as Hand's guardian ad litem, he was not responsible for the costs of the lawsuit. MCL 600.2415 provides:

Any person who brings an action as next of friend for an infant, or a person who is insane or otherwise mentally incompetent, shall be responsible for the costs of the suit. However, *no person who defends a suit as guardian ad litem of an infant or otherwise incompetent person shall be responsible for the costs of the suit* unless specifically charged by the court for some personal misconduct in the case. [Emphasis added.]

Similarly, MCR 2.201(E)(1)(c) provides:

If the minor or incompetent person does not have a conservator to represent the person as defendant, the action may not proceed until the court appoints a guardian ad litem, *who is not responsible for the costs of the action* unless, by reason of personal misconduct, he or she is specifically charged costs by the court. It is unnecessary to appoint a representative for a minor accused of a civil infraction. [Emphasis added.]

It is clear that Woods was not responsible for the costs of the case since MCL 600.2415 and MCR 2.201(E)(1)(c) clarify that a guardian ad litem is not responsible for the costs of the action. As further support for the fact that a guardian ad litem is not responsible for his costs, MCR 2.201(E)(3)(a) adds:

*Except for costs and expenses awarded to the next friend or guardian ad litem* or the represented party, a person appointed under this subrule may not receive money or property belonging to the minor or incompetent party or awarded to that party in the action, unless he or she gives security as the court directs. [Emphasis added.]

MCR 2.201(E)(3)(a) contemplates that a guardian ad litem will receive an award for his costs and expenses, which further indicates that Woods was not responsible for his own costs and expenses. Thus, Woods was entitled to receive his costs and expenses from another party. See MCL 600.2415; MCR 2.201(E)(1)(c) and (3)(a).

In addition, Woods was entitled to receive attorney fees as part of the costs and expenses he incurred as guardian ad litem. The phrase "costs and expenses" is not defined in MCR 2.201(E)(3)(a). We give an undefined term its ordinary meaning and consult a dictionary to determine the ordinary meaning, if necessary. See *Haynes v Neshewat*, 477 Mich 29, 36; 729 NW2d 488 (2007). The term "cost" is defined in *Black's Law Dictionary* (10th ed) as "[t]he amount paid or charged for something; price or expenditure." *Black's Law Dictionary* (10th ed) defines "expense" as "[a]n expenditure of money, time, labor, or resources to accomplish a result; esp., a business expenditure chargeable against revenue for a specific period." The term "expense" encompasses reasonable payment for the legal services rendered by Woods as guardian ad litem since Woods expended time and labor in order to provide legal services to Hand. See MCR 2.201(E)(3)(a).[3] Therefore, Woods is entitled to payment for any costs that he incurred and for the legal services he rendered as guardian ad litem. Accordingly, the circuit court abused its discretion when it denied Woods's motion for fees and costs after reconsideration of the issue. See MCR 2.201(E)(3)(a).

DHS is responsible for payment of Woods's expenses and costs since Hand was a ward of the state of Michigan. MCL 600.2415 and MCR 2.201(E) do not clarify which party is responsible for payment of the costs and expenses of a guardian ad litem.[4] However, the fact that DHS is responsible for payment of Woods's expenses and costs is apparent from the fact that DHS was accountable for Hand's care. MCL 400.203(1) provides, in part:

> A child under 17 years of age, provision for whose support and education has been made under regulations of the department, may be admitted to the Michigan children's institute by commitment to the department. All children committed to the Michigan children's institute shall be considered committed to the department and shall be subject to review by the juvenile division of the probate court under . . . MCL 712A.1 to 712A.32. *The superintendent of the institute shall represent the state as guardian of each child committed beginning*

---

[3] Thus, the award of attorney fees is consistent with the "American rule" regarding attorney fees, which provides that attorney fees are generally not recoverable unless a statute, court rule, or common-law rule provides an exception. See *Silich v Rongers*, 302 Mich App 137, 147-148; 840 NW2d 1 (2013).

[4] MCR 2.201(E)(1)(b) and MCL 600.2415 provide that the person who appears as next friend on behalf of the plaintiff is responsible for the "costs" of the suit. However, as explained in further detail below, Woods did not present a bill of taxable costs after the final judgment in the case. See MCL 600.2405 (providing that attorney fees may be taxed as costs when authorized); MCL 600.2415; MCR 2.201(E)(1)(b); MCR 2.625(F). Instead, Woods filed a motion for fees and costs before either party prevailed in the case. Additionally, the court rule does not specify that a next friend is responsible for the services of a guardian ad litem for the opposing party. Furthermore, a next friend is not responsible for *all* of the costs and expenses in the action since MCR 2.201(E)(3)(a) contemplates that costs and expenses may be awarded *to* a next friend. See MCR 2.201(E)(3)(a). Therefore, plaintiff was not liable to pay for Woods's services as an element of taxable costs. See *id*.

*with the day the child is admitted and continuing until the child is 19*, unless the superintendent or the department discharges the child sooner as provided in [MCL 400.208 or MCL 400.209] or if the child is at least 18 years of age but less than 21 years of age and is participating in extended foster care services as described in section 11 of the young adult voluntary foster care act. [Emphasis added.]

MCL 400.203(2) adds:

> The superintendent of the institute has the power to make decisions on behalf of a child committed to the institute. The attorney general or his or her representative shall represent the Michigan children's institute superintendent in any court proceeding in which the superintendent considers such representation necessary to carry out his or her duties under this act.

MCL 400.203(2) clarifies that the Superintendent is responsible for the decision-making on behalf of the child from the time the child is admitted until the child turns 19 years old. Thus, since the state was responsible for making decisions on behalf of Hand, DHS is the proper party for bearing the expenses related to Hand's defense. The fact that the state of Michigan, DHS, and DHS of Wexford-Missaukee Counties were dismissed from the case does not negate the fact that Hand was a ward of the state, and DHS remained responsible for Hand's care. Therefore, DHS is also responsible for payment of Woods's costs and expenses. See MCL 400.203(2).

A similar outcome is required in child-protective and delinquency proceedings. MCR 3.916(D) provides, "The court may assess the cost of providing a guardian ad litem against the party *or a person responsible for the support of the party*, and may enforce the order of reimbursement as provided by law." (Emphasis added.) MCR 3.916(D) applies to delinquency and child-protective proceedings within the family division of the circuit court. MCR 3.901(B)(1); MCR 3.903(A)(4). Thus, in the context of a delinquency or child-protective proceeding, it is clear that the family division of the circuit court may order that the person responsible for the support of the party pay the costs of providing a guardian ad litem. This case presents an analogous situation since a guardian ad litem was appointed for a ward of the state. Although Woods was appointed in a civil case, rather than in a child-protective or delinquency proceeding, the situation is comparable since Hand was a ward of the state and required a guardian ad litem in order for the case to proceed. Thus, a similar outcome is warranted. In this case, the person responsible for Hand was the state. See MCL 400.203(2). Therefore, we conclude that DHS is the responsible party for payment of Woods's fees and expenses. See MCR 3.916(D).

Finally, the fact that the Superintendent was Hand's guardian does not negate the fact that Woods acted as guardian ad litem. Woods argues that the term "guardian" in MCL 400.203(1) and MCL 712A.18 merely signified the responsibility of the Superintendent to provide for the needs of the wards entrusted to his care. In contrast, Woods points out that a "guardian ad litem" appointed under MCR 2.201(E)(1)(c) is charged with the task of representing a defendant minor child in a lawsuit. In short, Woods argues that the terms "guardian" and "guardian ad litem" have different meanings. See *People ex rel Sheahan v Wayne Circuit Judge*, 42 Mich 69, 70; 3 NW 259 (1879) (describing the difference between a general guardian, who does not represent a minor for purposes of litigation, and a guardian ad litem, who represents the minor in litigation);

3 Michigan Pleading & Practice (2d ed), § 28:3, p 12 (describing the difference between a general guardian and a guardian ad litem). We agree that the two terms have different meanings and that Woods is entitled to compensation for the services he rendered while representing Hand in the lawsuit in spite of the fact that the state had control over Hand's care. See MCL 400.203(1); MCR 2.201(E)(1)(c); *Sheahan*, 42 Mich at 70. For the reasons discussed above, the circuit court abused its discretion when it determined that Woods was not entitled to payment and that DHS was not responsible for payment.

## IV. TIMING OF REQUEST

The circuit court abused its discretion when it reasoned in its opinion that Woods delayed filing his motion for fees and costs for six months after this Court issued an opinion regarding the liability of Boyle's insurer. DHS relied on MCR 2.625(F)(2) in the circuit court, which provides a 28-day time limit for seeking taxable costs. However, MCR 2.625(F)(2) applies when there is a final judgment in the case. See MCR 2.625(F)(1) and (2) (providing that a trial court may tax costs when it signs the judgment, or the party entitled to taxable costs must seek the taxable costs within 28 days after the judgment was signed). Woods requested payment for his services under MCR 3.916(D) *before* entry of the final judgment in the case. Woods does not argue that the circuit court entered a final order before he sought his fees and costs. Instead, Woods argues that he was entitled to fees and costs since he acted as guardian ad litem for Hand, and he filed his motion before entry of the final judgment. Thus, the time limit outlined in MCR 2.625(F) does not bar Woods's request. There are no other applicable time limits on a guardian ad litem's request for attorney fees and costs. Therefore, the fact that Woods filed his motion for fees and costs approximately six months after this Court determined that an exclusion in Boyle's insurance policy precluded recovery from Boyle's insurer did not prohibit Woods from requesting fees and costs. See MCR 2.625(F).

## V. NOTICE

The circuit court also abused its discretion when it determined that DHS must receive notice of the appointment of a guardian ad litem. The circuit court failed to cite authority for the proposition that DHS must be notified when a guardian ad litem is appointed. DHS's argument that it did not have notice of Woods's appointment is unpersuasive in light of the fact that Hand was a ward of the state. DHS was on notice that a guardian ad litem would be appointed since Hand did not have a conservator to represent him. See MCR 2.201(E)(1)(c) (providing that a guardian ad litem must be appointed if a minor does not have a conservator). Furthermore, DHS had knowledge of the lawsuit since it was initially a party to the lawsuit. Additionally, DHS had the ability to examine the court records and files in the case, and Woods's appearance as lawyer and guardian ad litem for Hand appeared on the circuit court register of actions. See MCR 8.119(D)(1)(c) (providing that the register of actions is a case record); MCR 8.119(H) (providing that case records in MCR 8.119(D) are public records and outlining the process for access to public records).[5]   Plaintiff also requested a guardian ad litem for Hand under MCR

---

[5] We note that, contrary to the argument of the state of Michigan, DHS, and DHS of Wexford-Missaukee Counties, the circuit court has jurisdiction over the issue of Woods's fees and

2.201(E)(1)(c) in its first amended complaint, which was served on DHS. Therefore, the fact that the circuit court did not send a notice to DHS when Woods was appointed as Hand's guardian ad litem does not preclude payment.

## VI. . CONCLUSION

DHS is responsible for payment of the costs and attorney fees that Woods incurred as guardian ad litem for Hand. We reverse and remand for a determination of the costs and expenses that Woods incurred as guardian ad litem for Hand. We do not retain jurisdiction. As the prevailing party, Woods may tax costs pursuant to MCR 7.219.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering

---

expenses. See MCR 2.201(E)(1) and (2)(a); *Truitt*, 208 Mich at 622 (noting that the issue of the compensation and expenses of the guardian ad litem are determined by the trial court).