# STATE OF MICHIGAN

# COURT OF APPEALS

J G WENTWORTH SSC, LP,

        Plaintiff/Counter-Defendant,

v

ANTHONY MORRIS,

        Defendant/Cross-Defendant,

and

INTEGRITY LIFE INSURANCE COMPANY and
GENERAL AMERICAN LIFE INSURANCE
COMPANY,

        Defendants/Counter-
        Plaintiffs/Cross-Plaintiffs-
        Appellees/Cross-Appellants,

and

EXTENDED HOLDINGS, LTD and RSL
FUNDING, LLC,

        Defendants/Cross-Defendants-
        Appellants/Cross-Appellees.

UNPUBLISHED
February 22, 2018

No. 333413
Wayne Circuit Court
LC No. 15-005847-CZ

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant Anthony Morris separately sold rights to a single annuity payment to two separate purchasers—plaintiff J. G. Wentworth SSC, LP (Wentworth) and defendant/cross-appellee RSL Funding, LLC (RSL). In this resulting dispute, which was ultimately resolved by interpleader, defendants/cross-appellees Extended Holdings, Ltd. (Extended), and RSL appeal by right the trial court's May 26, 2016 final judgment and order, and thereby challenge certain earlier orders of the trial court. In the cross-appeal, defendants/cross-appellants Integrity Life Insurance Company (Integrity) and General American Life Insurance Company (General

-1-

American) challenge the amount of attorney fees awarded to them by the trial court. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case derives from a personal injury action brought by Morris against the city of Detroit. That action was resolved in 1990 by a structured-settlement agreement. Under the settlement agreement, the city was required to make monthly payments to Morris for life, plus several lump-sum payments on specified dates. The city assigned its payment obligations under the agreement to General American in 1990. In turn, General American purchased an annuity from Integrity, naming Morris as the annuitant. Under the terms of both the settlement agreement and the annuity, Morris was entitled in part to a lump-sum payment of $60,000 in 2015.[1]

Between 1998 and 2007, Morris sold his right to receive various payments under the structured settlement agreement—including the $60,000 lump sum payment—to Wentworth. Notwithstanding this sale, Morris agreed in January 2012 to sell rights to $40,000 of the $60,000 payment to RSL, who assigned to Extended its right to receive the payment. As required by the Revised Structured Settlement Protection Act (RSSPA), MCL 691.1301 *et seq.*, RSL applied to the trial court for approval of the transfer to Extended of the right to receive the $40,000 payment from Morris. The trial court issued an Unopposed Order of Transfer, approving "the Transfer of Structured Settlement Payment Rights . . . to [RSL's] assigned, Extended Holdings, Ltd. . . .from Anthony J. Morris." The order of approval included provisions releasing the annuity issuer and owner (in this case, Integrity and General American, respectively) from liability related to the transfer and ordering RSL and Extended to indemnify and hold harmless the annuity issuer and owner from any and all liability, "including but not limited to any claims asserted by any person or entity not a party hereto, claiming an interest in the Assigned Payments."

Before any of the $60,000 payment was remitted to any party, Wentworth discovered the transaction between Morris and RSL. Wentworth then initiated this action, naming Morris, Integrity, General American, and RSL (but not Extended), as defendants. Integrity answered Wentworth's complaint and asserted, as an affirmative defense, that it was entitled to interpleader relief. Integrity later filed a counterclaim and a cross-claim for interpleader relief under MCR 3.603. The cross-claim named Extended as a cross-defendant.

Integrity also filed another cross-claim for injunctive relief against RSL, alleging that on the same day that Wentworth instituted this action, RSL and Extended had filed an arbitration demand in Texas naming Morris, Wentworth, and Integrity as respondents. Integrity further alleged that the arbitration proceeding concerned the same subject matter as that at issue in this

---

[1] Originally, an addendum to the annuity agreement provided that Morris would receive that payment on July 1, 2015. The addendum was later amended, by hand, to instead make the $60,000 payment due on June 1, 2015. Confusion subsequently arose regarding the precise date that the $60,000 payment was actually due (or whether one or two payments were due).

action, and that Integrity had never agreed to arbitration. Integrity moved for a temporary restraining order or preliminary injunction seeking to stay the arbitration and to enjoin RSL from seeking to compel Integrity to participate in it. Ultimately, the trial court entered a stipulated order providing that neither RSL nor Extended would seek to compel Wentworth, Integrity, or General American to participate in the Texas arbitration proceeding.[2]

After filing an appearance for the limited purpose of challenging the trial court's jurisdiction over it, Extended immediately moved for summary disposition under MCR 2.116(C)(1) (lack of personal or in rem jurisdiction). The trial court never decided Extended's motion for summary disposition.

In due course, the trial court granted Integrity and General American the interpleader relief they sought. The court determined that Wentworth was entitled to the entire $60,000 payment, and it therefore ordered Integrity to remit that sum to Wentworth. The trial court also ordered Wentworth, RSL, and Extended to pay costs and attorney fees incurred by Integrity and General American in obtaining a preliminary injunction, defending the lawsuit, and bringing their action for interpleader. The court denied RSL's and Extended's motions for reconsideration, and subsequently entered a stipulated final judgment and order dismissing the action with prejudice.

This appeal and cross-appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition, its determinations regarding personal jurisdiction, *Lease Acceptance Corp v Adams*, 272 Mich App 209, 218; 724 NW2d 724 (2006), equitable issues, questions of statutory interpretation, *In re Forfeiture of 1987 Mercury*, 252 Mich App 533, 538; 652 NW2d 675 (2002), questions regarding the proper interpretation and application of court rules, and issues involving the common law, *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). We review for an abuse of discretion the trial court's decision to grant a preliminary injunction. *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012). We also "review a trial court's decision regarding whether to grant an award of attorney fees and costs for an abuse of discretion." *Doe v Boyle*, 312 Mich App 333, 343; 877 NW2d 918 (2015). "An abuse of discretion exists when the decision is outside the range of principled outcomes," or when it is premised on "the court's misunderstanding of controlling legal principles." *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 612; 821 NW2d 896 (2012).

We review for clear error a trial court's findings of fact. MCR 2.613(C); see also *Markilie v Bd of Co Rd Com'rs of Livingston Co*, 210 Mich App 16, 22; 532 NW2d 878 (1995).

---

[2] Although RSL and Extended objected to some of the contents of this order (particularly the portion ordering them to pay costs and attorney fees), they expressly agreed to the language prohibiting them from seeking to compel Wentworth, Integrity, or General American to participate in the Texas arbitration proceeding.

A finding is clearly erroneous only if this Court is "left with a definite and firm conviction that a mistake has been made." *Id*.

## III. MAIN APPEAL

### A. PERSONAL JURISDICTION

RSL and Extended argue that the trial court erred by failing to consider and decide Extended's motion for summary disposition and by exercising personal jurisdiction over it. We disagree.

After initially filing its motion for summary disposition and noticing it for a hearing to be held on September 25, 2015,[3] Extended made no reference to its motion in three subsequent motion hearings. Indeed, at an October 9, 2015 hearing, when the trial court stated its belief that there was only *one* motion for summary disposition before it—i.e., RSL's motion—Extended's attorney did not correct the court. Nor did Extended re-notice its motion for a later date after the initial hearing date had passed without argument on its motion, as it could have under MCR 2.119(E)(1). Only after the trial court ruled against Extended on the substantive merits of the parties' respective claims did Extended raise the issue of its undecided motion in a motion for reconsideration. In its February 9, 2016 opinion and order denying reconsideration, the trial court stated that "the Register of Actions indicates that the [sic] Extended Holding's motion for summary disposition due to lack of personal jurisdiction was withdrawn on October 9, 2015 and therefore was not argued by the parties at the hearing and not considered by the Court."

The trial court's finding that Extended had withdrawn its motion was not clearly erroneous. MCR 2.613(C); *Markilie*, 210 Mich App at 22. The register of actions contains several entries for October 9, 2015. In addition to reflecting that a hearing on one or more motions took place on that date, it reflects the notation "*Dismiss Hearing or Injunction*," and indicates that the "dismissed" hearing was "CANCELED" after having been reset by the court from September 25, 2015 to October 2, 2015, and then to October 9, 2015. The register of actions does not specifically state which motion's hearing was cancelled. But Extended's motion for summary disposition had originally been noticed for September 25, 2015, although there were also other motions noticed for that date, including RSL's motion for summary disposition and Integrity and General American's motion for costs and fees incurred in obtaining injunctive relief regarding the Texas Arbitration proceedings. At the beginning of the October 9, 2015 motion hearing, the trial court stated "I believe Extended Holdings is out, correct?," to which counsel for Wentworth replied that his client was willing to dismiss Extended but that he believed there were still "issues between Integrity and Extended that may preclude them from being dismissed at this point." Counsel for Extended said nothing. There was no further discussion of Extended's status as a party. Later in the hearing, counsel for Wentworth stated to

---

[3] The Register of Actions does not reflect that a hearing was actually held on September 25, 2015. It does, however, reflect that a hearing was rescheduled from September 25, 2015 to October 2, 2015, and then further rescheduled from October 2, 2015 to October 9, 2015.

-4-

the court that RSL and Extended had "not filed any responsive pleadings. Their first response was the summary disposition which is before your Honor today." Counsel for Extended also said nothing in response to the trial court's statement, "I believe there is one motion for summary disposition" (referencing RSL's motion for summary disposition).

We are far from possessing the definite and firm conviction that a mistake was made. MCR 2.613(C); *Markilie*, 210 Mich App at 22. Although the register of actions does not indicate precisely which motion hearing was cancelled, it certainly could have been Extended's motion; this would explain why Extended's counsel did not correct the court when it stated its belief that only one summary disposition motion—RSL's— remained. And we do not view Extended's stipulation to some orders of the trial court subject to a reservation of its personal jurisdiction defense as conclusively establishing that it never withdrew the specific motion at issue. Finally, the mere fact that Extended did not place its withdrawal of its motion on the record at the October 9, 2015 hearing does not mean that such a withdrawal did not occur; the transcript of the hearing itself indicates that the parties and court went "off the record" at least once, and the register of actions also lists a "special conference" occurring on that day.

Additionally, it is undisputed that Extended did not attempt to re-notice its motion or otherwise assert a personal jurisdiction defense until after the trial court had ruled on the merits of the case. Even assuming that Extended's motion was not withdrawn, Extended contributed to the court's purported error by failing to take the necessary steps to ensure that the court timely heard and decided Extended's pending motion. "Error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). "Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). Even assuming that the trial court's finding that Extended had withdrawn the motion was clearly erroneous, we would be disinclined to allow Extended to transform the trial court's failure to decide the motion into an appellate parachute. See *Freed v Salas*, 286 Mich App 300, 308; 780 NW2d 844 (2009) (noting that it is well-settled that parties cannot harbor error as an appellate parachute).[4]

## B. PRELIMINARY INJUNCTION

RSL and Extended also argue that the trial court abused its discretion by entering a preliminary injunction against them in favor of General American. We disagree.

---

[4] Although we do not decide the issue, we note that Extended received the assignment of an annuity originally issued in Michigan according to the laws of Michigan, which was required to be approved by a Michigan court; the order of the trial court required that Integrity make the payment to Extended, and set various rights and responsibilities of the parties to the transaction. It is thus at least cognizable that Extended's contacts with Michigan would be sufficient to establish limited personal jurisdiction. See MCL 600.725.

At a July 1, 2015 motion hearing, RSL and Extended affirmatively assented to the trial court's entry of a stipulated order precluding them from seeking to compel General American to participate in the Texas arbitration proceedings. By expressly stipulating to entry of the order in question, appellants waived their instant claim of error. See *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016). Waiver extinguishes any error and precludes appellate review. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).[5]

## C. INTERPLEADER

RSL and Extended also argue that the trial court erred by granting equitable interpleader relief to Integrity and General American. Specifically, they argue that the doctrine of unclean hands bars Integrity and General American from such equitable relief because Integrity made material misrepresentations concerning the date that the $60,000 annuity payment was to be paid, and that those representations caused this controversy to arise in the first place. We disagree.

"The clean hands maxim is an integral part of any action in equity." *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975). The doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id*. (quotation marks and citations omitted). Further, "a tortious act can never be the foundation of an equitable right." *Putnam v Fitzgerald*, 44 Mich 113, 116; 6 NW 198 (1880).

At common law, interpleader sounded in equity, *Gairing v McClelland*, 311 Mich 315, 319; 18 NW2d 838 (1945),[6] and the court rule governing interpleader actions, MCR 3.603, bears no indication that our Supreme Court intended to alter the common law. Accordingly, the

---

[5] Even assuming, arguendo, that RSL and Extended did *not* waive their instant claim of error, and further assuming that their argument is meritorious, they are nevertheless unentitled to reversal on that basis. Again, "error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis*, 258 Mich App 210. Moreover, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Living Alternatives for Developmentally Disabled, Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994). By stipulating to entry of the order they now seek to contest, RSL and Extended contributed to the trial court's purported error, and they therefore cannot capitalize upon it as a ground for reversal. "Any other conclusion would be contrary to the rule that defendants cannot harbor error as an appellate parachute." *People v Pipes*, 475 Mich 267, 278; 715 NW2d 290 (2006); accord *Freed*, 286 Mich App at 308.

[6] See also 48 CJS Interpleader, § 4 ("[i]nterpleader is an equitable remedy or proceeding, which is governed by equitable principles and rules").

unclean hands doctrine might provide a valid defense against interpleader under a proper set of circumstances.

This case, however, does not present such circumstances. "When many persons have been defrauded and available funds are insufficient to make all these persons whole, a race to the courthouse can be expected." *Marsh v Foremost Ins Co*, 451 Mich 62, 71; 544 NW2d 646 (1996). Therefore, the unclean hands doctrine must be applied with great care in interpleader actions. See *Sakon v Santini*, 257 Mich 91, 93; 241 NW 160 (1932). Such actions involve multiple adverse parties, and it would be inherently inequitable to bar one party from interpleader relief based on the soiled hands of another party. *Id*. Accordingly, the doctrine "ought not to be applied against one brought in by interpleader," nor should it be applied where doing so will prejudice the rights of those with clean hands. *Id*. In this case, application of the unclean hands doctrine against Integrity would have impacted Wentworth (as an interpleaded party) and General American (as an obligor subject to multiple liability). Consequently, assuming (without deciding) that Integrity's hands *were* unclean, it would nevertheless have been inappropriate for the trial court to have barred the interpleader action on that basis. *Id*.

Moreover, "[a] defendant with unclean hands may not defend on the ground that the plaintiff has unclean hands as well." *Attorney General v PowerPick Club*, 287 Mich App 13, 53; 783 NW2d 515 (2010). RSL failed to comply with the provisions of the RSSPA in this case, and its hands are therefore unclean with regard to the transactions at issue in this case. RSL was the "transferee" in its transaction with Morris. See MCL 691.1302(u). Accordingly, under MCL 691.1307(6), RSL had the "sole responsibility" to comply with the requirements of MCL 691.1303, which, among other things, required RSL to provide "the payee" (i.e., Morris) with a "disclosure statement" at least three days before he signed the transfer agreement, setting forth both "[t]he amounts and due dates of the structured settlement payments to be transferred" and "[t]he discounted present value of the payments to be transferred . . . under federal standards for valuing annuities[.]" In its briefs on appeal, RSL admits that when it entered into a transfer agreement with Morris, it was unaware of both the actual due date for the $60,000 payment and the amount that then remained due to be paid to Morris (i.e., nothing—he had previously assigned his rights to Wentworth). Under MCL 691.1307(6), it is immaterial *why* RSL lacked such information. The relevant consideration is that without such information, RSL could not have provided Morris with the disclosures required by MCL 691.1303. It is impossible to provide a disclosure statement including information that one does not have, and it is equally impossible to calculate the discounted present value of an annuity payment without knowing either the amount of that payment or when it is due.

RSL contends that it had no obligation, common law or statutory, to obtain such information. But as the trial court recognized, under MCL 691.1307(6), RSL did, in fact, have a statutory obligation to do so. "The very foundation of a court of equity is good conscience, and it will not lend its aid . . . to assist law violators." *Society of Good Neighbors v Van Antwerp*,

324 Mich 22, 28; 36 NW2d 308 (1949). Because RSL's hands are unclean with regard to this transaction, it cannot assert an unclean hands defense against General American and Integrity.[7]

In light of the fact that we reject RSL's unclean hands theory, we hold that the trial court did not err by granting interpleader relief to General American and Integrity. The RSSPA unambiguously provides that neither a structured settlement obligor nor an annuity issuer "shall . . . bear any responsibility or liability arising from a transferee's failure to comply with" MCL 691.1303. MCL 691.1307(6).[8] As already noted, RSL failed to comply with MCL 691.1303. Had it done so, it would have been aware of the actual due date for the $60,000 payment, and it also would have been aware that those funds were no longer owed to Morris.

In sum, under MCL 691.1307(6), neither General American nor Integrity can be held liable for RSL's damages in this case, and neither has ever claimed any right to receive or permanently retain the $60,000 at issue. Consequently, General American and Integrity are disinterested parties with no direct stake in the outcome of this case. Under such circumstances, we discern no error in the trial court's decision to grant them equitable interpleader relief under MCR 3.603.

## D. ATTORNEY FEES

Finally, RSL and Extended contend that the trial court erred by assuming that it possessed the authority to award attorney fees to Integrity and General American. We disagree. RSL and Extended do not challenge the amount of costs and attorney fees awarded, but only challenge the trial court's decision to order any costs and attorney fees at all.

"Michigan generally follows the 'American rule' regarding attorney fees, which provides that fees are not generally recoverable unless a statute, court rule, or common-law exception provides otherwise." *Silich v Rongers*, 302 Mich App 137, 147-148; 840 NW2d 1 (2013). In this case, however, Integrity and General American are correct that the trial court had the discretion to grant them their costs and reasonable attorney fees.

---

[7] Furthermore, RSL's failure to comply with all of the requirements of the RSSPA made its subsequent assignment to Extended ineffective. See MCL 691.1305(d) ("A payee may make a further transfer of structured settlement payment rights only after complying with all of the requirements of this act."). Extended therefore possessed no right to the payment at issue, because its rights arose only through RSL's assignment.

[8] MCL 691.1305(c) also provides that "[a]n annuity issuer or a structured settlement obligor is not required to divide a periodic payment between the payee and a transferee or assignee or between 2 or more transferees or assignees." The $60,000 payment at issue in this case qualifies as a "periodic payment" under MCL 691.1302(j). Consequently, General American and Integrity had no obligation to divide the $60,000 payment between the purported transferees (i.e., Wentworth and RSL).

The RSSPA provides a statutory basis for a fee award. MCL 691.1305(b) provides in pertinent part:

The transferee is liable to the structured settlement obligor and the annuity issuer for both of the following:

* * *

(*ii*) Other liabilities or costs, including reasonable costs and attorney fees, arising from the structured settlement obligor's and the annuity issuer's compliance with the order of the court or from the transferee's failure to comply with this act.

As Integrity (the annuity issuer) and General American (the obligor) note, the transfer order obtained by RSL ordered Integrity to pay $40,000 of the $60,000 payment to Extended, despite the fact that the right to receive those same funds had previously been assigned to Wentworth. In other words, the costs and attorney fees incurred by Integrity and General American in this matter arise out of both their attempts to lawfully comply with the trial court's previous orders and from RSL's failure to abide by the notice requirements of the RSSPA. Accordingly, the trial court had the discretion to award Integrity and General American their costs and fees in this matter under MCL 691.1305(b)(*ii*).

Additionally, under the court rule governing interpleader actions, MCR 3.603, the trial court had discretion to award Integrity and General American their costs and attorney fees as disinterested stakeholders. MCR 3.603(E) provides:

Actual Costs. The court may award actual costs to an interpleader plaintiff. For the purposes of this rule, actual costs are those costs taxable in any civil action, and a reasonable attorney fee as determined by the trial court.

(1) The court may order that the plaintiff's actual costs of filing the interpleader request, tendering the disputed property to the court, and participating in the case as a disinterested stakeholder be paid from the disputed property or by another party.

(2) If the plaintiff incurs actual costs other than those described in subrule (1) due to another party's unreasonable litigation posture, the court may order that the other party pay those additional actual costs.

(3) An award made pursuant to this rule may not include reimbursement for the actual costs of asserting the plaintiff's own claim to the disputed property, or of supporting or opposing another party's claim.

Therefore, the trial court correctly recognized its authority to award attorney fees in this action.

IV. CROSS APPEAL

Integrity and General American argue in their cross-appeal that the trial court misapplied the controlling legal test for determining the reasonableness of awarded fees, as set forth by our Supreme Court in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), and recently clarified in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016). Specifically, they contend that the trial court failed to consider all of the relevant *Smith* factors and approve the rates charged and the number of hours billed by Integrity and General American's attorneys. We agree that remand is required for the trial court to consider the relevant *Smith* factors.

In determining the reasonableness of requested attorney fees, "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services." *Smith*, 481 Mich at 530. To do so, courts generally rely "on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan." *Id*. at 531. "The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Pirgu*, 499 Mich at 281. Finally, the court must consider "*all*" of the following nonexclusive factors (along with any other relevant factors) "to determine whether an up or down adjustment is appropriate":

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

> (3) the amount in question and the results obtained,

> (4) the expenses incurred,

> (5) the nature and length of the professional relationship with the client,

> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

> (7) the time limitations imposed by the client or by the circumstances, and

> (8) whether the fee is fixed or contingent. [*Id*. at 281-282.]

"In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*. at 282.

In this case, when the trial court awarded Integrity and General American attorney fees related to the preliminary injunction proceedings, it immediately leapt to a consideration of the reasonableness factors, rather than beginning its inquiry "by determining the fee customarily charged in the locality for similar legal services," see *Smith*, 481 Mich at 530, and it then attempted to use the reasonableness factors to determine reasonable rates for Integrity's and General American's attorneys in light of their respective experience, reputation, and abilities. In

-10-

other words, the trial court conflated the first step of the test with the last one. Its error in that respect permeated the remainder of its analysis. Instead of calculating the "baseline figure" by multiplying the fee customarily charged in the locality for similar legal services by the reasonable number of hours expended, see *Pirgu*, 499 Mich at 281, the trial court multiplied the rate it had established *for each attorney* by the number of hours it found reasonable. The trial court also failed to briefly discuss all of the reasonableness factors on the record, and its related order is silent with regard to those factors. Therefore, it is unclear which of the eight reasonableness factors the trial court considered, or whether it considered "*all*" of them. See *id*. at 281.

This error extended to the trial court's later order regarding interpleader costs and fees. The trial court relied on its previous determination of reasonable hourly rates for the respective attorneys. This led the trial court to again improperly calculate the "baseline figure." Further, after entertaining argument from the parties on whether the reasonableness factors militated in favor of deviating up or down from that erroneous baseline figure, the trial court failed to briefly discuss each of the factors on the record. Instead, the trial court simply stated, "I don't find . . . any basis for a deviation balancing all of the statements made by counsel. I think that the number that the Court has before it now with the reduced hours is reasonable and that's what will be ordered." Nor did the trial court discuss the reasonableness factors in its related order. Therefore, we cannot discern whether the court actually considered the required reasonableness factors.

On the record before this Court, we cannot determine whether the court abused its discretion by ruling as it did. See *id*. at 283 n 50. Therefore, we vacate the trial court's fee awards and remand for further consideration of the reasonableness of those awards in light of this opinion. See *id*. at 283. We uphold the trial court's awards of reasonable costs.

We affirm the trial court with regard to the main appeal. In the cross appeal, we affirm the trial court's awards of costs, vacate the trial court's attorney fee awards, and remand for further proceedings regarding the reasonableness of those fee awards. Having prevailed in both the main appeal and cross-appeal, Integrity and General American may tax costs. MCR 7.219(A). [9]

---

[9] Integrity and General American ask this Court to direct the trial court on remand to enter an order awarding them reasonable costs and attorney fees they have incurred in the instant appeal and cross-appeal under the RSSPA. Because this issue was neither raised in, nor addressed and decided by, the trial court, we decline to address it. See *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994) ("[a]ppellate review is limited to issues actually decided by the trial court"). Cross-appellants may, however, raise the issue in an appropriate motion on remand if they wish to do so. As stated, Integrity and General American may tax costs related to this appeal and cross-appeal as prevailing parties. MCR 7.219(A).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola