*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONNIE FIELDS,

        Plaintiff-Appellant,

and

ANDERSON MEDICAL SUPPLIES,

        Intervening Plaintiff,

v

NATIONAL GENERAL INSURANCE
COMPANY, INTEGON NATIONAL INSURANCE
COMPANY, GARLANDO DOXIE, KANESHA
MARZETTE, and MICHIGAN AUTOMOBILE
INSURANCE,

        Defendants,

and

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
August 17, 2023

No. 361959
Genesee Circuit Court
LC No. 20-113979-NI

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

In this no-fault insurance action, plaintiff, Ronnie Fields, appeals as of right the trial court's order granting summary disposition to defendant, Nationwide Mutual Fire Insurance Company, under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

This action arises out of an accident that occurred on September 30, 2019. Plaintiff was hit by a car at around 8:15 p.m. while riding a bicycle near the intersection of Home Avenue and Oxley Avenue in Flint, Michigan. Plaintiff sustained serious injuries, including multiple broken bones and lacerations, blunt force trauma to the chest and abdomen, and a traumatic brain injury.

In relation to the accident, plaintiff submitted two applications for personal protection insurance (PIP) benefits through the Michigan Automobile Insurance Placement Facility (MAIPF). The first application, dated October 4, 2019, explained that plaintiff was hit by a car while riding his bicycle and transported to Hurley Medical Center for treatment. The application further stated that plaintiff did not have any of the same injuries prior to the accident, that he had no preexisting medical conditions, and that he had not applied for social security benefits before or after the accident. The second application, dated November 4, 2019, again stated the cause of the accident and confirmed that plaintiff had no preexisting medical conditions or injuries that would be relevant to his claim for benefits. However, the new form noted that plaintiff was eligible for social security benefits, contrary to the information from the October 4, 2019 application. Notably, each of the applications contained a fraud warning, which stated:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan Assigned Claims Plan maintained by the Michigan Automobile Insurance Placement Facility for payment or any other benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under section 4503 of the Insurance Code that is subject to the penalties Imposed under section 4511. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the Assigned Claims Plan.

Plaintiff filed his complaint in February 2020, initially naming the driver of the car that hit him, the owner of the car, and two insurance companies as defendants. Plaintiff later amended his complaint to add the MAIPF as a defendant, arguing that because he was not covered by a no-fault insurance policy on the date of the accident, the MAIPF was required to assign his claim to an insurer. The MAIPF eventually assigned his claim to Nationwide, and Nationwide was substituted as a defendant.[1] All of the other defendants to the lawsuit were dismissed through various means.

Relevant to this appeal, Nationwide ultimately filed a motion for summary disposition under MCR 2.116(C)(10). Nationwide alleged that plaintiff committed fraud by submitting false information in support of his claim for PIP benefits, and that under MCL 500.3173a(4), he was therefore ineligible to receive said benefits. Nationwide took issue with information contained in plaintiff's medical records, deposition testimony, and his two applications for benefits. It alleged that plaintiff failed to disclose medical conditions and injuries sustained before the car accident at issue in this case in both of his benefits applications. In his deposition testimony, plaintiff testified

---

[1] The rest of the defendants were dismissed, either via motions for summary disposition or by stipulation. None of said defendants participate in this appeal.

to suffering significant injury from a dog bite, which ultimately required a skin graft. Nationwide also alleged that plaintiff failed to disclose that he had eye surgery prior to the accident and that he is legally blind. According to Nationwide, "[p]laintiff's blindness and eye surgery is material to his claims in this matter as plaintiff testified that his eye sight was the same after the accident, as it was from before the accident[.]" Nationwide further alleged that plaintiff's medical records revealed that between 2012 and 2019, he had been treated for complications arising from the dog bite, as well as for injuries sustained after someone allegedly struck him with a baseball bat, including a fractured leg. Plaintiff was also treated for "altered mental status" on two occasions, first in 2012 and again in 2017. Based on all of this information, Nationwide argued:

> Plaintiff lied about his medical history, his medication history, and same and similar injuries in his application for benefits and at his deposition. While [MCL 500.3173a(4)] does not limit the misrepresentations to those only applicable to the claims at issue, Defendant has presented records to show prior head injuries and prior leg injuries and treatment, which are material [to] the alleged head and leg injury being claimed from the subject accident. The case law further supports that the failure to disclose medical conditions, similar and different to those claimed in an accident, is material and entitles defendant to summary disposition.

Nationwide claimed that plaintiff violated MCL 500.3173a(4) by knowingly submitting false statements in support of his claim for benefits. It asserted that no genuine issue of material fact existed as to whether plaintiff committed fraud and was thus ineligible for PIP benefits, and asked the trial court to grant its motion for summary disposition under MCR 2.116(C)(10).

In response, plaintiff argued that under MCL 500.3173a(4), Nationwide could not show that plaintiff "knowingly" sought to commit fraud, and pointed out that his applications for benefits were clearly prepared by another person. Plaintiff also argued that the applications themselves were inadmissible hearsay, as the preparer of the documents was unknown and it was unclear whether plaintiff had a hand in preparing the documents at all.

The trial court heard oral argument on the matter, and the parties largely argued consistent with their briefs. At the close of the hearing, the trial court stated, in relevant part:

> The existing record does not raise a genuine issue of material fact as to [plaintiff's] ability to be aware and understanding of what his signature on the document, the two applications, mean.

> The full context of the record which does not indicate any backtracking on his part either by saying I didn't know what I was signing because of my head injury, my concussion, and the like.

> \* \* \*

> He did sign it and his signing of it is an indication that what he is signing is true. If I couldn't draw that conclusion, then what would be the point of anybody signing anything? How would somebody say, no, that's not true, I'm not signing it?

-3-

* * *

> And a lot of people don't fill out things. I were [sic] to venture a guess that 99% of the affidavits that I get with lawyers involved in case and are signed by the affiant are 100% nearly filled out by the lawyer. Could the affiant say, well, I didn't fill that out? I just signed it. So I'm not saying that is true. That's a little bit stronger because it's an affidavit.

> But these are serious documents that are filed. And if he didn't have the awareness of what he was signing, then somebody else should have been able to act for him. I've got nothing, other than the suggestion that, due to his injuries, he couldn't have understood what he was signing and, by not understanding it, he couldn't have knowingly misrepresented even though every single bit of the misrepresentations pertain to treatment for injures that he had . . . . Who would know more than him on this?

Accordingly, the trial court entered an order granting Nationwide's motion for summary disposition under MCR 2.116(C)(10).

Plaintiff subsequently filed a motion for reconsideration, arguing again that Nationwide could not show that he "knowingly" committed fraud under MCL 500.3173a(4). Plaintiff also argued for the first time that under *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), statements made during the course of litigation, including deposition testimony and medical records, cannot be used to show fraud. Finally, plaintiff argued that discovery was incomplete, and that summary disposition was thus premature. The trial court denied the order, noting that it had not been persuaded that its decision to grant summary disposition to Nationwide was erroneous. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting Nationwide's motion for summary disposition because he did not knowingly commit fraud within the meaning of MCL 500.3173a(4). Specifically, plaintiff contends that (1) under *Williamson v AAA of Mich*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357070), any medical records or deposition testimony obtained after litigation was commenced cannot be used to defeat his claim for benefits; (2) the two applications for benefits he submitted to the MAIPF must be considered inadmissible hearsay under MRE 801 and 802; and (3) Nationwide cannot show that plaintiff intended to commit fraud within the meaning of MCL 500.3173a(4). We disagree in all respects.

The trial court granted the motion for summary disposition under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. "A

-4-

genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

However, to the extent that plaintiff raises arguments regarding *Williamson* and the use of statements made after litigation has commenced in the context of no-fault insurance fraud, the issue is unpreserved because plaintiff first raised this argument in his motion for reconsideration. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). As a general rule, "a failure to timely raise an issue waives review of that issue on appeal." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citation omitted). But this Court has discretion to "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citation omitted). Unpreserved issues are generally reviewed for plain error. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 427 (quotation marks and citations omitted). "An error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017) (cleaned up).

## A. EVIDENCE OF FRAUD

Plaintiff first argues that evidence from his deposition and medical records cannot be used to show that he committed fraud. Under MCL 500.3105, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3173a governs the initial determination of eligibility for benefits through the MAIPF, and more specifically, MCL 500.3173a(4) governs fraudulent insurance claims made to the MAIPF, or to insurers assigned by the Michigan Assigned Claims Plan (MACP). The provision states, in relevant part:

(4) A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility, or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.403] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of [PIP] benefits under the assigned claims plan.

In *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017), this Court explained that a person commits a fraudulent insurance act when:

(1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the

claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Id*. (footnote omitted).]

Relatedly, this Court in *Williamson*, ___ Mich App ___ (Docket No. 357070); slip op at 8, held that "the fraudulent insurance act provision in MCL 500.3173a does not apply to statements made after litigation has ensued."

Here, there is no dispute that the two applications for benefits erroneously indicated that plaintiff had no preexisting medical conditions and had not sustained any prior injuries that might be relevant to his claim for benefits. Plaintiff's deposition testimony and medical records ultimately revealed that between 2012 and 2019, he was treated for complications arising from the dog bite and for injuries sustained after someone struck him with a baseball bat, including a leg fracture. Additionally, it is undisputed that plaintiff is legally blind, which was not disclosed on either application. The October 4, 2019 application also noted that plaintiff was not eligible for social security benefits, which was ultimately determined to be a false statement.

Plaintiff argues that under *Williamson*, none of this information can be used to show that he committed fraud in violation of MCL 500.3173a(4) because it was information obtained after litigation had commenced. We agree that any information in plaintiff's deposition testimony regarding his social security eligibility, as well as conflicting information regarding his medical records, may not be used to support Nationwide's claim that plaintiff committed insurance fraud. However, contrary to plaintiff's argument on appeal, his medical records can be used to support Nationwide's fraud allegations.

In *Williamson*, this Court ruled that "the fraudulent insurance act provision in MCL 500.3173a does not apply to statements made after litigation has ensued." *Williamson*, ___ Mich App at ___; slip op at 8. In doing so, the Court extended its earlier holding in *Haydaw*, 332 Mich App 719, which involved a contractual claim for PIP benefits, to cases involving claims for benefits made through the MACP. Regarding statements made after litigation has commenced, the *Haydaw* Court explained:

> False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false are matters for a jury or a judge acting as fact-finder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper. Indeed, defendant is essentially seeking dismissal of plaintiff's claim on the basis of alleged discovery misconduct. Given that questions of credibility and intent are generally left to the trier of fact, "[i]t is . . . doubtful whether dismissal for intentionally false deposition testimony is ever appropriate." *Swain v Morse*, 332 Mich App 510, 524, 957 NW2d 396 (2020). In any event, it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy. [*Id*. at 726-727, 957 NW2d 858 (alteration in original).]

-6-

The *Williamson* Court adopted this rationale wholesale, but also noted that this Court clarified the scope of *Haydaw* in *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 619; 963 NW2d 695 (2020). *Williamson*, ___ Mich App at ___; slip op at 8. There, this Court stated:

> We read *Haydaw* as standing for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the commencement of legal proceedings. This recognizes the reality that a plaintiff-insured only commences suit after the defendant-insurer denies the plaintiff's claim and that the denial cannot possibly be based on an event that has not yet taken place. This does not mean that a defendant cannot rely on evidence of fraud obtained after litigation commences. It simply means that the evidence must relate to fraud that *took place before the proceedings began*. [*Fashho*, 333 Mich App at 619 (emphasis added).]

Based on *Williamson* and *Fashho*, plaintiff's deposition testimony would constitute "[f]alse statements made during discovery[.]" It thus cannot be considered evidence of fraud under MCL 500.3173a(4).

However, plaintiff's medical records could be considered as evidence of fraud under MCL 500.3173a(4). Even though the medical records were obtained by Nationwide during discovery, the information contained in them concerned incidents that occurred well before plaintiff applied for PIP benefits through the MAIPF. Although such evidence would not directly show that plaintiff engaged in fraud, the medical records pertain to incidents that happened well before litigation commenced. Consequently, they do not fall under *Williamson*'s umbrella, and were properly considered by the trial court as documentary evidence in support of Nationwide's motion for summary disposition under MCR 2.116(C)(10). Plaintiff cannot show that error occurred on this basis.

## B. HEARSAY

Plaintiff next argues that the applications for benefits are inadmissible hearsay and should not have been considered documentary evidence in favor of granting Nationwide's motion for summary disposition. Under MCR 2.116(G)(6), "[a]ffidavits, depositions, admissions, and documentary evidence offered in support or in opposition to a motion based on [MCR 2.116(C)(10)] shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6). Evidence presented in support of a motion for summary disposition does not itself have to be in admissible form, but the content or substance of the evidence must be admissible. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In general, hearsay evidence is not admissible unless it qualifies under an exception to the rules of evidence. MRE 802; *Merrow v Bofferding*, 458 Mich 617, 626; 581 NW2d 696 (1998). Plaintiff makes no mention of any of the hearsay exceptions, and instead simply states that the two benefits applications from October 4, 2019, and November 4, 2019, lack foundation and are inadmissible

hearsay because the person responsible for preparing each document is unknown and because it is unclear whether plaintiff understood what he was signing.

The statements at issue do not themselves qualify as hearsay because they are admissions by a party opponent under MCR 801(d)(2). MCR 801(d)(2) governs admissions by a party opponent, and states:

> (2) *Admission by Party-Opponent*. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

Plaintiff signed the applications, suggesting that they must be considered his own statements under MCR 801(d)(2)(A). Even so, plaintiff contends that the applications were inadmissible because questions exist about whether someone read the contents of either application to him and whether he truly understood what he was signing. He further argues that nobody has been able to identify the person who prepared the November 4, 2019 application on his behalf, as he is legally blind and could not have done it himself.

The circumstances surrounding plaintiff's decision to sign the October 4, 2019 application are certainly suspect. In the trial court and on appeal, plaintiff presented copies of his medical records in order to show that on October 4, 2019, he was not capable of understanding that he was signing an application for benefits or that it contained inaccuracies. Plaintiff's medical records indicate that on October 4, 2019, he was "disoriented as to time," and was experiencing a speech delay. Since plaintiff signed the application within days of sustaining severe injury, including a traumatic brain injury, and his medical records suggest that he was disoriented on the date that he signed the application, a question of fact exists as to whether plaintiff was competent to sign the application on October 4, 2019, and whether he was fully aware of its contents. The trial court erroneously overlooked these issues in granting Nationwide's motion for summary disposition under MCR 2.116(C)(10).

However, the trial court ultimately reached the correct result regarding the November 4, 2019 application for benefits. Plaintiff points out that the November 4 application appears to have been prepared by an individual named "Briana Pitts," whose name appears on the document. However, a separate check box indicates that plaintiff prepared the document himself. Plaintiff claims that Briana Pitts cannot be found, and that the document is thus invalid and untrustworthy on its face. He further argues that it is unclear whether he knew what he was signing, as he was legally blind at the time and would have needed someone to read the document to him.

There is no dispute that plaintiff was legally blind when he signed the November 4, 2019 application. In this instance, however, plaintiff presented no evidence, other than the fact of his blindness, to indicate that he did not understand the document he was signing, or that he was

unaware of its contents. He states that it is unclear whether Briana Pitts helped him with the application, as well as whether anyone read the documents to him so that he understood their contents. But if Briana Pitts cannot be found, as plaintiff alleges on appeal, then plaintiff himself is the only person who could have provided evidence to support the claim that he was unaware of the contents of the application due to his blindness. Plaintiff has presented nothing but speculation that the November 4, 2019 application is untrustworthy and should not be admitted. Mere speculation does not create a genuine issue of material fact. See *Smith v Globe Life Ins Co*, 460 Mich 446, 457; 597 NW2d 28 (1999) (stating that the plaintiff's argument regarding the authenticity of the information contained in a life insurance application was insufficient to create a genuine issue of material fact where the plaintiff "offered no proof that someone else answered the health inquiries contained in the application without [his] knowledge or direction[.]"). Accordingly, the November 4, 2019 application for benefits was admissible as the statement of a party opponent, MCR 801(d)(2), and trial court did not err by considering it as documentary evidence in support of Nationwide's motion for summary disposition.

## C. INTENT

Plaintiff's final argument is that the trial court abused its discretion by granting summary disposition to Nationwide where no evidence was presented to show that plaintiff *intended* to defraud Nationwide. In doing so, plaintiff implies that there is an intent element in MCL 500.3173a(4). We disagree.

In *Bakeman v Citizens Ins Co of the Midwest*, ___ Mich App ___ (2022) (Docket No. 357195), the plaintiff argued that the trial court erred by granting summary disposition to the defendant after concluding that the plaintiff knowingly signed and submitted false claims for PIP benefits. The plaintiff claimed that he did not intend to defraud the defendant, who was assigned to administer his claim via the MAIPF, and that he did not know he was signing fraudulent documents. *Id*. at ___; slip op at 1, 4-5. Regarding the plaintiff's "intent" argument, this Court held that MCL 500.3173a(4) "unambiguously establishes that the only scienter requirement is mere knowledge 'that the statement contains false information concerning a fact or thing material to the claim.' " *Id*. at ___; slip op at 4. The Court therefore concluded that a "[p]laintiff's subjective intent is therefore irrelevant. Rather, the critical concern is whether [the] plaintiff knew that false material information had been provided." *Id*.; slip op at 4. Regarding the plaintiff's argument that he did not sign the forms with knowledge that they contained false statements, this Court stated that " 'the law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, *even if he or she has not read the agreement*.' " *Id*., quoting *Lease Acceptance Corp v Adams*, 272 Mich App 209, 221; 724 NW2d 724 (2006) (emphasis added). The Court found that the plaintiff had not presented evidence of "coercion, mistake, or fraud" in signing the documents, and that he thus could not claim to have no knowledge of their contents. *Bakeman*, ___ Mich App at ___; slip op at 4-5.

In this case, we are not convinced that the trial court correctly concluded that no genuine issue of material fact existed regarding whether plaintiff knew or understood the contents of the October 4, 2019 application. According to plaintiff's medical records, plaintiff was still in the hospital and suffering from obvious cognitive impairment as a result of the injury on that date, and yet signed the application anyway. Thus, it is unclear whether he was competent to sign the

application, or whether he effectively did so by "mistake," *id*.; slip op at 4, in that he may have been too disoriented to understand what he was signing. Whatever the case may be, we would conclude that the trial court erred in relying on the October 4, 2019 application as documentary evidence that supported granting Nationwide's motion for summary disposition.

The same cannot be said of the November 4, 2019 application. With regard to that application, plaintiff merely argues that he did not know what he was signing because he is blind, and nobody read him the contents of the application. To our knowledge, no Michigan caselaw exists discussing whether legal blindness is sufficient to prove that an individual did not know or understand the contents of a document they were asked to sign; plaintiff presents no caselaw on this subject either. Moreover, under *Bakeman*, a person is presumed to understand the contents of a document even if he or she has never read it. *Id*. at ___; slip op at 4, Further, even though he is blind, plaintiff has never argued that he lacked the capacity to sign the November 4, 2019 application for benefits or that his decision to sign the document was based on "coercion, mistake, or fraud[,]" *id*.; slip op at 4, nor has he ever presented evidence to support such a claim. That plaintiff did not ask someone to read him the contents of the document before he signed it does not negate the fact that he did sign it. Accordingly, this Court must presume that plaintiff "kn[e]w the nature of the document and . . . underst[ood] its contents." *Lease Acceptance Corp*, 272 Mich App at 221. Under the circumstances, even if the trial court erred regarding the October 4, 2019 application, it nevertheless reached the correct result regarding the November 4, 2019 application.

## III. CONCLUSION

Although the October 4, 2019 application could have been considered inadmissible under MRE 803(6) due to a lack of trustworthiness, the same is not true of the November 4, 2019 application; plaintiff has presented no proof to show that his signature on that document was not trustworthy or authentic. Further, plaintiff's medical records were not improperly considered as evidence of fraud in violation of *Williamson*, ___ Mich App at ___; slip op at 8, and there is no intent element in MCL 500.3173a(4) that might bar Nationwide's claim. Moreover, since plaintiff signed the applications—particularly the November 4, 2019 application—and has provided no evidentiary proof to support the argument that he lacked the capacity to do so, that he did so by mistake, or that he was coerced or defrauded in this case, we affirm the trial court's ruling. For all of these reasons, plaintiff has failed to show that the trial court erred by granting summary disposition to Nationwide under MCR 2.116(C)(10).

Affirmed.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick